1  Cheryl Johnson-Hartwell (SBN 221063)
   E-mail:  cjohnson-hartwell@bwslaw.com
2  Keiko J. Kojima (SBN 206595)
   E-mail:  kkojima@bwslaw.com
3  BURKE, WILLIAMS & SORENSEN, LLP
   444 South Flower Street, Suite 2400
4  Los Angeles, California 90071-2953
   Tel: 213.236.0600 Fax: 213.236.2700
5
   Attorneys for Defendants
6  Northern Data US, Inc. and Northern Data
   US Holdings, Inc.
7

8              UNITED STATES DISTRICT COURT

9        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11  JOSHUA PORTER, an individual, and        Case No. 2:24-cv-03389
    GULSEN KAMA, an individual,
12                                            **APPENDIX OF STATE COURT**
                  Plaintiffs,                 **DOCUMENTS IN SUPPORT OF**
13                                            **DEFENDANTS' NOTICE OF**
             v.                               **REMOVAL OF CIVIL ACTION**
14
    NORTHERN DATA US, INC., a
15  Delaware corporation; NORTHERN
    DATA US HOLDINGS, INC., a
16  Delaware corporation; and DOES 1
    through 10, inclusive,
17
                  Defendants.
18

19
          Defendants Northern Data US, Inc. and Northern Data US Holdings, Inc.
20
    hereby submit the following Appendix of State Court Documents in Support of
21
    Defendants' Notice of Removal of Civil Action.
22
    ///
23
    ///
24
    ///
25
    ///
26
    ///
27
    ///
28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4879-5108-2424 v1                    1                    Case No.
                                      APPENDIX OF STATE COURT DOCUMENTS
                                      ISO NOTICE OF REMOVAL OF CIVIL ACTION

# TABLE OF CONTENTS

| EXHIBIT NO. | DESCRIPTION | DATE |
|---|---|---|
| 1. | Complaint For: 1. Wrongful Termination In Violation of Public Policy (Porter); 2. Violation of Labor Code Section 1102.5; 3. Wrongful Termination In Violation of Public Policy (Kama)); 4. Violations of New Jersey Conscientious Employee Protection Act, N.J.S.A. §34:19-1,Et Seq.; 5. Misappropriation of Name and Likeness; 6. Invasion of Privacy[1] | 3/8/24 |
| 2. | Summons | 3/8/24 |
| 3. | Civil Case Cover Sheet | 3/8/24 |
| 4. | Civil Case Cover Sheet Addendum and Statement of Location | 3/8/24 |
| 5. | Notice of Case Assignment | 3/8/24 |
| 6. | Alternative Dispute Resolution ("ADR") Information Package | 3/8/24 |
| 7. | Notice of Case Management Conference | 3/8/24 |

Dated:  April 23, 2024

BURKE, WILLIAMS & SORENSEN, LLP

By: _Keiko J. Kojima_
_____
Cheryl Johnson-Hartwell
Keiko J. Kojima
Attorneys for Defendants
Northern Data US, Inc. and Northern
Data US Holdings, Inc.

---

[1] Defendants are requesting the filing of the unredacted Complaint under seal through a concurrently-filed Application to Seal.  The publicly-filed version of the Appendix attached hereto as Exhibit "1" consists of a redacted Complaint.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4879-5108-2424 v1

2

Case No.
APPENDIX OF STATE COURT DOCUMENTS
ISO NOTICE OF REMOVAL OF CIVIL ACTION

EXHIBIT 1



1   Russell M. Selmont (SBN 252522)
      rselmont@ecjlaw.com
2   **ERVIN COHEN & JESSUP LLP**
    9401 Wilshire Boulevard, Twelfth Floor
3   Beverly Hills, California 90212-2974
    Telephone  (310) 273-6333
4   Facsimile  (310) 859-2325

5   Attorneys for Plaintiffs, JOSHUA PORTER and GULSEN KAMA

Electronically FILED by
Superior Court of California,
County of Los Angeles
3/08/2024 12:35 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By E. Galicia, Deputy Clerk

**REDACTED VERSION
OF DOCUMENT
PROPOSED TO BE
FILED UNDER SEAL**

8               **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                   **COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

11  JOSHUA PORTER, an individual, and         Case No.   24STCV05852
    GULSEN KAMA, an individual,
12                                            *Unlimited Civil*
              Plaintiffs,
13
        v.                                    **COMPLAINT FOR:**
14                                            1. **WRONGFUL TERMINATION IN**
    NORTHERN DATA US, INC., a Delaware           **VIOLATION OF PUBLIC POLICY**
15  corporation; NORTHERN DATA US                **(PORTER);**
    HOLDINGS, INC., a Delaware corporation;   2. **VIOLATION OF LABOR CODE**
16  and DOES 1 through 10, inclusive,            **SECTION 1102.5**
                                              3. **WRONGFUL TERMINATION IN**
17            Defendants.                         **VIOLATION OF PUBLIC POLICY**
                                                 **(KAMA))**
18                                            4. **VIOLATIONS OF NEW JERSEY**
                                                 **CONSCIENTIOUS EMPLOYEE**
19                                               **PROTECTION ACT, N.J.S.A. § 34:19-1,**
                                                 **ET SEQ.)**
20                                            5. **MISAPPROPRIATION OF NAME AND**
                                                 **LIKENESS**
21                                            6. **INVASION OF PRIVACY**

23                                            **DEMAND FOR JURY TRIAL**

18254.1:11166215.2                    1
                              COMPLAINT

ERVIN COHEN & JESSUP LLP

1    Plaintiff Joshua Porter ("Plaintiff Porter"), and Plaintiff Gulsen Kama ("Plaintiff Kama"),

2    allege as follows in their Complaint (hereinafter, jointly "Plaintiffs") against Defendants Northern

3    Data US, Inc. and Northern Data US Holdings, Inc. ("Defendants").

4                                    **SUMMARY OF ACTION**

5        1.      Defendants are the US subsidiaries of Northern Data AG (together, "Northern

6    Data"), a publicly traded German company in the cryptocurrency and bitcoin mining industries.

7    Plaintiff Porter was originally hired as Defendants' Chief Operating Officer but after his

8    exemplary performance over the first 8 months on the job, he was promoted to President and CEO

9    of Defendants.  Shortly after his promotion, Plaintiff Porter began raising concerns to his superiors

10   at the Northern Data AG parent company that Northern Data was falsely misrepresenting the

11   strength of its financial condition to investors, regulators and business partners (they were

12   borderline insolvent) and equally problematic, Northern Data was knowingly committing tax

13   evasion to the tune of potentially tens of millions of dollars.  Plaintiff Porter's concerns fell on

14   deaf ears, so he stated his intention to go directly to Northern Data's Board of Directors to alert

15   them of the companies' unchecked illegal activity.  Shortly after, in obvious retaliation for his

16   whistleblowing activity, Plaintiff Porter was illegally terminated.  Defendants claimed the

17   termination was the result of an internal decision to eliminate the position of Northern American

18   Chief Operating Officer.  At the time of this termination, however, Plaintiff Porter was

19   Defendants' President and CEO (and had been for almost two months) and no longer the Chief

20   Operating Officer, so it is manifestly clear that Defendants fabricated this excuse in a failed and

21   transparent attempt to cover their tracks.  Defendants' illegal activity violates California labor laws

22   and subjects Defendants to millions of dollars of liability.

23       2.      Plaintiff Kama was originally employed as the North America Chief Financial

24   Officer ("NACFO") for the Defendants with a start date of July 20, 2022.  After her outstanding

25   performance as NACFO, about two months later she was promoted to Group Deputy Chief

26   Financial Officer ("DCFO") at Northern Data, and about three months after that, she was named

27   Group Chief Financial Officer ("CFO").  Following her promotion, Plaintiff Kama was actively

28   exposing and then attempting to keep Defendants from falsely misrepresenting their financial

18254.1:11166215.2                                2
                                            COMPLAINT

1   position to potential auditors, tax advisors and investors.  At various junctures, Plaintiff Kama

2   reported her concerns regarding the accounting and securities fraud that she was finding to

3   Northern Data's global CEO, COO, the Chair of the Supervisory Board and the company's Chief

4   Legal and Compliance Officer, to no avail, because the CEO and COO were perpetuating the

5   accounting and securities fraud.  The CEO and COO intended to deceive existing and potential

6   investors at an upcoming meeting scheduled for June 12, 2023.  As a result of Plaintiff Kama

7   repeatedly informing and warning the officers that were responsible for the illegal acts that they

8   were committing fraud, on or about June 8, 2023, Plaintiff Kama was retaliated against and

9   illegally terminated for her whistleblowing activities.  Specifically, Kama was terminated for her

10  admonitions that Northern Data was flagrantly violating securities and tax laws and her attempts

11  to ensure Northern Data did not continue to make fraudulent representations in connection with

12  the company's audit process and to impose audit controls and governance procedures on Northern

13  Data's most senior management.  Defendants' illegal activity violates California and New Jersey

14  labor laws and subjects Defendants to millions of dollars of liability.  Moreover, Defendants

15  misled investors when they published an investor presentation in April 2023 with financials with

16  Plaintiff Kaman's name, title and picture, but did not ask her to review the presentation,

17  misappropriating her name and image, invading her privacy and showing her image in a false

18  light.  Defendants' illegal activity violates labor laws and common law and also subjects

19  Defendants to millions of dollars of liability.

20                                      **PARTIES**

21      3.      Plaintiff Porter is an individual who at all relevant times was a resident of the

22  County of Los Angeles, California.

23      4.      Plaintiff Kama is an individual that currently resides in the County of San Diego,

24  California and was a resident of the State of New Jersey for part of the relevant time giving rise to

25  these claims and a resident of the State of California for the other part of the time giving rise to

26  these claims.

27      5.      On information and belief, Defendant, Northern Data US, Inc., is a Delaware

28  corporation with a principal place of business in Reston, Virginia.

ERVIN COHEN & JESSUP LLP

18254.1:11166215.2

3

COMPLAINT

ERVIN COHEN & JESSUP LLP

1    6.    On information and belief, Defendant, Northern Data US Holdings, Inc., is a

2    Delaware corporation with a principal place of business in Reston, Virginia.

3    7.    Plaintiffs are ignorant of the true names and capacities of defendants sued herein as

4    Does 1 through 10 and thus sues said defendants by their fictitious names.

5    8.    Plaintiffs are informed and believe and thereon allege that one or more of the

6    fictitiously-named defendants is liable in some manner for the claims alleged herein.  Plaintiffs

7    will amend this complaint to allege the true names and capacities of the fictitiously-named

8    defendants when the same become known to them.

9    **JURISDICTION AND VENUE**

10   9.    Jurisdiction and venue are proper in this Court because at the time of the events

11   giving rise to the labor claims alleged herein, Plaintiff Porter was an employee of Defendants,

12   performing the majority of his work in the County of Los Angeles, California.  Furthermore, on

13   information and belief, Defendants have business operations in Los Angeles, California, and the

14   majority of the events giving rise to the causes of action herein occurred in Los Angeles,

15   California. Many of Plaintiff Kama's claims arose and/or persisted while she was a resident of

16   California.  Furthermore, Plaintiff' Kama's wrongful termination and retaliation claims arise from

17   the same type of whistleblowing activity as those of Plaintiff Porter and are derived from a

18   common nucleus of operative facts (i.e., Defendants' tax evasion and other material

19   misrepresentations about their financial condition) and there is a near total overlap in witnesses

20   and parties.  Accordingly, Kama's claims are properly jointed to Porter's, further ensuring

21   jurisdiction and venue are proper for all causes of action alleged herein.

22   **FACTS COMMON TO ALL CLAIMS**

23   **Plaintiff Joshua Porter**

24   10.   Plaintiff Porter is a highly-credentialed and successful technology executive,

25   investor and advisor.  After graduating from Columbia University Business School in 2011,

26   Plaintiff Porter joined Goldman Sachs before serving as Managing Director at Reimagined

27   Ventures, an experienced family investment office, and then as Chief Executive Officer at NoCap,

28   a mobile platform that allows music artists to reach digital live audiences worldwide.

18254.1:11166215.2

4

COMPLAINT

ERVIN COHEN & JESSUP LLP

1    11.    Defendants recruited Plaintiff Porter to become their Chief Operating Officer in

2    March 2022.  On March 31, 2022, Roseanne Kincaid-Smith, Northern Data AG's Chief Person

3    Officer ("Kincaid-Smith"), emailed Plaintiff Porter an offer of employment.  Pursuant to that

4    email, Plaintiff Porter was to receive yearly compensation of between $630K and $810K

5    depending on bonuses, as well as 5000 options.

6    12.    On or about April 11, 2022, Plaintiff Porter signed an Offer Letter with Defendant

7    Northern Data US Holdings, Inc.  That agreement called for Plaintiff Porter to commence work on

8    or around May 1, 2022, established that his title was COO, and that his duties were "central

9    operations for the Americas..."  It also set forth that he was receiving 5000 options to purchase

10   "shares of NDUS's ultimate parent, Northern Data AG, which option grant will be subject to your

11   remaining employed by NDUS or one of its affiliates through the date this is six (6) months from

12   the date on which your employment with NDUS commences under this letter."



13    13.

14

15

16

17

18

19    14.

20

21

22

23

24    15.

25

26

27

28   / / /

APPENDIX 008

16.     In Q3 2022, Plaintiff Porter began negotiating a deal with a Texas-based company for hosting services. In connection with this deal, Plaintiff Porter told Yoshida that Northern Data should recognize its profits in the United States (and thus pay taxes thereon). Thillainathan, however, disagreed even though Deloitte had recently refused to provide the requested opinion letter. Ultimately, Northern Data instructed the Texas counterpart to keep all the Bitcoin owed to Northern Data generated in its own cryptowallet so that no revenue would be generated at that time (and thus no need to make a firm decision on whether to recognize it as US revenue and pay taxes). Plaintiff Porter assumed Northern Data was just kicking the can down the road a little further before it would implement the proper corporate tax structure and reporting protocols ████████████████████████████████████████████████████████

17.     In November 2022, Northen Data had to do a round of layoffs. However, not only was Plaintiff Porter not laid off, but he was one of a few key executives the company actually paid a Retention Bonus to keep from leaving. The Retention Bonus, dated December 14, 2022, compensated Plaintiff Porter $150K and made clear that this payment "does not impact [Plaintiff Porter's] ability to participate in any other bonus or cash incentive plan for which [Plaintiff Porter is] otherwise eligible."

18.     Lest there be any doubt that Defendants were happy with and impressed by Plaintiff Porter's job performance during his first eight months of employment, on January 17, 2023, Plaintiff Porter was promoted to Defendants' President/CEO, making him the highest-ranking officer of Northern Data's North American operations. Defendants subsequently filed multiple public documents memorializing Plaintiff Porter's promotion and new title.

19.     After receiving the promotion, Plaintiff Porter for the first time began getting a limited understanding of Northern Data's financials. Plaintiff Porter was shocked to learn that the company had a $30M German tax liability and additional liabilities of almost $8M while simultaneously having only $17M cash on the balance and a monthly burn rate of $3M-$4M.

20.     Shortly after becoming the President and CEO of Defendants, Plaintiff Porter was asked to sign multiple legal documents including corporate restructuring documents, asset sales and insurance contracts that required Plaintiff Porter to make certain representations and

APPENDIX 009

ERVIN COHEN & JESSUP LLP

1   warranties on Northern Data's behalf, including ones relating to the company's financial strength

2   and solvency.  Throughout February 2023, Plaintiff Porter had multiple conversations (via

3   videoconference) with Northern Data's Executive Leadership Team ("ELT"), including

4   Thillainathan, Yoshida, Black, and Kincaid-Smith (now COO) to express his concerns with the

5   company's financial state, cash position and solvency (or potential lack thereof).

6       21.   In early February 2023, Plaintiff Porter was also very troubled by Northern Data

7   AG's and Defendants' handling of their US tax treatment.  Following Deloitte's refusal to provide

8   an opinion letter supporting the companies' decision not to pay the IRS any taxes for profits

9   generated with cryptominers on US soil, Plaintiff Porter assumed that the companies would

10  change their operational structure and/or tax treatment to not risk being in violation of US tax

11  laws.  He also expected that Defendants would take remedial measures to account for their

12  rampant tax evasion during previous years.  However, instead, Defendants took actions to

13  unlawfully avoid US taxes, or failing to report US taxable operations, at least for tax year 2021.

14  Plaintiff Porter recognized that the US tax liability could easily be in the tens of millions of dollars

15  and given his existing concerns about the companies' solvency, it was clear that an IRS audit

16  could potentially cause Northern Data to become insolvent.

17      22.   On February 3, 2023, Plaintiff Porter informed Black



23      23.   Around this time, Thillainathan, Northern Data's CEO, stopped returning Plaintiff

24  Porter's communications, including his Microsoft Teams messages, which was the primary

25  method through which the two communicated.  In February 2023, Plaintiff Porter began to

26  understand that he was being iced out because of his complaints and concerns regarding the

27  companies' financial misrepresentations and tax evasion.  Plaintiff Porter continued to

28  communicate with Yoshida, who privately stated he shared Plaintiff Porter's concerns.

18254.1:11166215.2

24.     By early March 2023, Plaintiff Porter came to understand that the decision to use the offshore entity and not recognize or pay any US taxes from the US-based cryptomining operations came directly from Thillainathan, who, on information and belief, was also its founder and largest employee shareholder (and thus stood to gain the most if the company propped up its revenue by failing to pay taxes). On further information and belief, while Thillainathan had attempted to couch this decision as purely a business-based risk, he in fact recognized that the companies were very likely in fragrant violation of US tax laws and simply chose to chart this course of action for the companies for his own personal financial self-interest.

25.     In early March 2023, Plaintiff Porter had numerous conversations with Yoshida about his concerns about the companies' finances and misrepresentations related thereto, including specifically the US tax evasion which was creating an 8 figure tax liability. On multiple occasions, Porter told Yoshida that he was planning on going above Thillainathan to report on Thillainathan's and Defendants' illegal activity, including its tax evasion and fraud. On information and belief, Yoshida relayed Porter's concerns and Porter's stated intent to engage in whistleblowing activity to the ELT. On March 14, 2023, Plaintiff Porter was so concerned that Thillainathan was not looking out for the best interests of the companies that he sent a WhatsApp message to Yoshida stating: "I wonder if this is something we go around [Thillainathan] and directly to the board/shareholders?"

26.     Three days later, on March 17, 2023, Plaintiff Porter, who had been given a retention bonus just three months prior and promoted to President/CEO of North America two months prior, received notice that Defendants were terminating him. Plaintiff Porter was specifically told that he was not being terminated for cause but rather because Defendants were eliminating the position of North American Chief Operating Officer. However, at that point in time, Plaintiff Porter was no longer the COO but had already been elevated to President and CEO of North America, highlighting that Defendants' purported justification was a complete fabrication. In truth, Plaintiff Porter was terminated for his whistleblowing activity regarding Defendants' tax evasion and misrepresentations regarding its solvency and to prevent him from executing his plan to go directly to Northern Data AG's Board of Directors because the executive

ERVIN COHEN & JESSUP LLP

APPENDIX 011

ERVIN COHEN & JESSUP LLP

1  officers were not taking proper (or any) steps to address or fix the problems Plaintiff Porter

2  identified.

3  **Plaintiff Gulsen Kama**

4      27.    Plaintiff Kama is an experienced accounting and finance professional, having

5  worked in several large public and private companies.  She is an expert in corporate accounting.

6      28.    She has an engineering degree from Bogazici University in Istanbul, Turkey, and a

7  Master of Business Administration degree from the Terry College of Business at the University of

8  Georgia, in Athens, Georgia, in the United States.

9      29.    In the past, Plaintiff Kama worked for several companies in a corporate finance and

10  accounting executive capacity, including, but not limited to, United Airlines, the Great Atlantic &

11  Pacific Tea Company, AIG, Jackson Hewitt Tax Services and Quest Diagnostics.

12      30.    On June 21, 2022, Plaintiff Kama was offered a position as NACFO at Northern

13  Data, reporting to Yoshida.  Her start date was July 20, 2022.

14      31.    Plaintiff Kama's primary duties included central financial activities for the

15  Americas.  It required travel outside of New Jersey and the United States.  Her base compensation

16  was $330,000 per year, but there were additional performance bonuses awarded, bringing her

17  Target Total Compensation to $924,000.  She received a $100,000 signing bonus, subject to a 12-

18  month claw-back.  The Agreement also awarded her 5,000 options for Northern Data AG stock,

19  the parent company.

20      32.    Like Plaintiff Porter, Plaintiff Kama also was not laid off during the round of

21  layoffs in November 2022.  In fact, she was promoted from NACFO to Group DCFO in

22  September 2022 and from Group DCFO to Group CFO in December 2022.  Her salary was

23  bumped by $70,000 from $330,000 to $400,000 per year as Group CFO.  Further, she was

24  awarded a $110,000 performance bonus in April 2023.  Defendants subsequently filed multiple

25  public documents and made public announcements memorializing Plaintiff Kama's promotion and

26  new title.

27      33.    KPMG was the auditor for Northern Data AG for the audit of its 2020 and 2021

28  financials. It was understood that KPMG would also be handling the audit for the 2022 financials.

18254.1:11166215.2

9

COMPLAINT

1   As Group DCFO, and later Group CFO, Plaintiff Kama led the interactions with KPMG. Those
2   interactions started in November 2022, and turned into monthly checkpoints.  During a February
3   15, 2023, meeting with the supervisory board, KPMG raised concerns about the liquidity position
4   of the company being a going concern, conditions KPMG gave to sign its engagement letter as
5   Northern Data's auditor.  KPMG required the requested documentation regarding the company's
6   position to be provided by mid-March 2023 at the latest in order to support the targeted May 2023
7   completion date for the audit.

8        34.    In a February 22, 2023 email, Plaintiff Kama notified the ELT that the draft
9   liquidity forecast was completed and ready to be shared with KPMG.  KPMG asked for
10  "confirmed/signed" commitments to be included in the forecast, and because of the delay in the
11  capital raise and GPU sales contract, Plaintiff Kama wanted to make sure she was setting the right
12  expectation with the auditors.

13       35.    Plaintiff Kama then recommended in a series of emails to Kincaid-Smith, Tom
14  Schorling, the Chair of the Supervisory Board, Thillainathan, Black, and the ELT, all dated March
15  2, 2023,



25       36.    In February 2023, Plaintiff Kama began providing weekly updates regarding the
26  liquidity and audit status to the CEO, COO, the ELT and the Supervisory Board.  After Plaintiff
27  Kama provided an update on March 6, 2023, Thillainathan indicated that the capital raise should
28  be completed in a week in order to avoid a liquidity crisis.

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

37.     On March 6, 2023, Plaintiff Kama and Black ███████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

████████████████████████

38.     Plaintiff Kama recognized that Defendants were not only being untruthful with their auditors, KPMG, but they were also misrepresenting their financial position (including possible insolvency) to their current and potential investors.  As soon as Plaintiff Kama raised this issue to members of the ELT, she was purposefully left out of critical communications and fund-raising activities.

39.     She attempted to mitigate the situation.  On April 3, 2023, Plaintiff Kama expressed concern to Kincaid-Smith regarding her exclusion from critical financial conversations, but her concerns were brushed off.

40.     Then, the ELT actively took numerous steps to hide material company financial and legal information from her.  For example, in April 2023, Thillainathan created a critical audit deficiency when he released information regarding the various executive bonuses without giving Plaintiff Kama a calculation or receiving her written approval for said bonuses beforehand.

41.     Further, Thillainathan and Kincaid-Smith were about to send out press releases with financial information without Plaintiff Kama's review or approval, falsifying Defendants' financial status. ████████████████████████████████████

████████████████████████████. Again, this would be the same type of securities fraud or misleading the market, for which a criminal complaint was already previously filed by the German financial regulators BaFin against Northern Data executives in October 2021.

████████████████

██████████████████████████████████████

██████████████████████████████████████



[Emphasis added.]

42.

43.     In addition, Plaintiff Kama advised Thillainathan to get the Finance and Legal departments more involved in the business-impacting decisions early to avoid major risks to

ERVIN COHEN & JESSUP LLP

1    corporate governance and the audit, but her advice was again ignored.

2         44.    This was odd because Plaintiff Kama's work was roundly praised.  On April 24,

3    2023, before sending out the forecast submission to KPMG, Plaintiff Kama emailed Black,

4    Kincaid-Smith and Thillainathan, ██████████████████████████████████████████

5    ███████████████████████████████████████████████████████████████

6    ███████████████████████████████  Kincaid-Smith stated that the submission

7    "looks fab."  As such, the business plan and liquidity forecast with a summary of the underlying

8    assumptions were given to KPMG on April 25, 2023, and a detailed walk-through of the

9    documents took place on May 3, 2023.

10        45.    In late April 2023, Plaintiff Kama spoke with Black ████████████████

11   ████████████████████████████████████████████████████

12   ██████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████

14   ████████████████████████████.

15        46.    As of May 3, 2023, the KPMG engagement still had not been signed.  Thillainathan

16   then demanded that Plaintiff Kama start looking into other auditors for the 2022 and 2023 audits.

17   While he said to look at the top 20-25 ranked auditors; he expressed that he did not care if they

18   were ranked that high, because no one cares who the auditors are.  He claimed KPMG was being

19   difficult and unreasonable, but the underlying command was that he wanted a company that would

20   perform the audit with no questions asked.  Plaintiff Kama attempted to push back but

21   Thillainathan ordered her to do as instructed and told her point blank that her head was on the

22   chopping block.  So to be clear, Thillainathan and Kincaid-Smith were purposefully committing

23   accounting and securities fraud, hiding things from Kama, refusing to give her information, and

24   then overtly threatening her.

25        47.    Thillainathan told Plaintiff Kama that Legal and Finance should stay out of his

26   way; they were mere support functions whose purpose was only to execute deals that were

27   negotiated by the CEO and COO, no questions asked.  He then stated that Legal and Finance are

28   the "road blockers" and have stood in the way of Northern Data's ability to take advantage of new

18254.1:11166215.2

13

COMPLAINT

1   opportunities.  He stated both departments must follow the COO's direction.  Kama took this to

2   mean in no uncertain terms that she was not to question Thillainathan's or Kincaid-Smith's orders

3   nor question their actions, even if they plainly ran afoul of accounting or securities laws or

4   otherwise amounted to fraud.

5       48.    · Two days later, on May 5, 2023, in a meeting with Kincaid-Smith, Plaintiff Kama

6   was again told to just go along with what Thillainathan wanted, no questions asked.  Plaintiff

7   Kama stated that Finance and Legal were there to protect the company, the Board and the CEO

8   from undue risk, and that the departments had to follow regulations and the law and, as such, if

9   Thillainathan wanted to continue with his actions, he at least had notice of the risk.  She would not

10  take on personal risk by not making the CEO aware of any and all risks.  She also indicated that

11  she may be asked to testify if there is a legal proceeding in the future.

12      49.    KPMG notified Plaintiff Kama during a May 9, 2023, Teams call, that the first

13  round of internal reviews was successful; no additional documents were needed.  On May 12,

14  2023 Teams call, KPMG indicated its review was still in progress and it was promising; so, the

15  audit's time frame discussion could take place the following week.

16      50.    In a June 2, 2023, email, Thillainathan requested that Plaintiff Kama provide her

17  with a weekly update on the audit, which she had already been doing for months.  Thillainathan

18  expressed his "deep concern regarding the level of information shared" with him during the audit

19  process even though Plaintiff Kama had provided updates to him and the other executives on at

20  least 24 separate occasions since becoming CFO.  Thillainathan asked for a report immediately

21  regarding the steps taken to ensure that KPMG sign the engagement letter.

22      51.    At that point, in an email dated June 4, 2023, Plaintiff Kama stated that the audit

23  process required significant executive attention and provided Thillainathan with the information

24  requested, noting that until the engagement letter was signed, and KPMG allocated resources to

25  the audit, the timeline could not be finalized.  She also reminded him that she had shared at least

26  24 email updates with him over the last few months.  She further stated that audit process would

27  be difficult and time-consuming, "as it will require a critical review and revamp of the company's

28  corporate governance practices and internal controls for financial and operational management of

ERVIN COHEN & JESSUP LLP

APPENDIX 017

1 the business." She was terminated four days later.

2       52.    Then, Black stated to Defendants' executive management in a June 5, 2023, email

3 that ███████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████

5 ███████████████ Black quit the ELT although Plaintiff Kama does not know the date.

6       53.    On June 7, 2023, Plaintiff Kama refuted claims within a June 6, 2023, email from

7 Kincaid-Smith. In the email, Kincaid-Smith alleged that Plaintiff Kama had cancelled all one-on-

8 one budget meetings over the last two months. This was an outright lie and was Kincaid-Smith's

9 attempt to create a false record. Plaintiff Kama supplied records that demonstrated that all but one

10 meeting was cancelled by Kincaid-Smith, not Plaintiff Kama. Plaintiff Kama only cancelled the

11 meeting scheduled for June 6, 2023. In the June 7, 2023 email, Plaintiff Kama stated again that

12 she was being "threatened and retaliated against for her efforts to complete the company's audit

13 process, follow the laws and accounting rules, and impose audit controls and governance

14 procedures on management," and that Kincaid-Smith was circumventing her authority and

15 "violating critical corporate governance and internal controls that are critical for an audit."

16       54.    Then Plaintiff Kama, via a June 7, 2023, email to the Finance Leadership Team,

17 issued a special "hold notice" to the Accounting and Finance Department in order to ensure proper

18 corporate governance and internal controls required by the audit process. She also issued a

19 directive not to spoliate any accounting records. The notice reads, in part, as follows:

20         "1. Effective 1PM EST Jun 6, 2023 there is a hold notice on all e-mails,
        instant messages, documents, files etc. Please DO NOT spoliate any

21         historical records.

22         2. If anybody from the ELT (CEO - Aroosh Thillainathan, COO - Rosanne

23         Kincaid Smith, GC - Jim Black), Managing Directors (Head of Mining -
        Niek Beudeker, Head of Cloud - Karl Havard, Head of DCI - Corey

24         Needles), VP Corporate Strategy - Stephanie Ehrenberg, Head of Investor
        Relations - Jens-Philipp Briemle, Chief of Staff - Maximilian Martin,

25         directly reach out to you requesting financial information, analysis, advice,
        reporting, etc. I need to be made aware of the request immediately.

26

27         3. If any ELT member is on an email where I am not included, it needs to
        be forwarded to me immediately.

28

ERVIN COHEN & JESSUP LLP

4. Any meeting with any other ELT member(s) where I am not on the attendee list, I need to be made aware of ahead of the meeting taking place.

5. Any work product (reports, analysis, working files in Excel, Word, Power Point, etc.) produced by Finance needs to go through my explicit review and approval before it can be released outside of Finance. Examples include but are not limited to, analysis, figures or statements to be used in press releases or any other communication with investors, vendors, partners, clients, advisors.

6. Access to live working files on restricted Finance group or individual Finance Team member folders should not be granted to people outside of Finance. I have shared instances with you where assumptions in critical analysis were manipulated and then shared with the CEO under the guise of Finance, i.e. the CFO approving the numbers. This is a critical gap in the controls and corporate governance process that needs to be remedied immediately.

7. No payments can be made on behalf of the company without my explicit review and approval of the payment."

55.     Following that, on June 8, 2023, after receiving a large bonus just two months prior, Plaintiff Kama was told she was terminated for cause from her position as CFO via an email from Linda Lee, Head of People Ops.  She was specifically told in the email that she was being terminated because other staff members allegedly complained about how she allegedly treated them, although she was never given any notice of said alleged complaints.  All of these alleged complaints magically appeared after Plaintiff Kama  questioned and complained about the accounting and securities fraud that the executive management, and in particular, Thillainathan and Kincaid-Smith, wished to perpetuate on the investors and KPMG by misleading them as to Defendant's financial status.  Defendants' justification was a ruse, a complete fabrication.  During her tenure at Northern Data, Plaintiff Kama received numerous messages, including lms and WhatsApp messages, from the CEO, COO and GC singing her praises.  Further, she was offered a severance package, which she would not have been offered had there been any merit whatsoever to Defendants' claims.  In reality, Plaintiff Kama was terminated for her repeated whistleblowing activities.  She was terminated because she called out her superiors when they were going to perpetuate fraud upon the shareholders and upon the auditor by misrepresenting the company

1    financial position.

2         56.      Plaintiff Kama's termination came just one business day before Northern Data's

3    extraordinary shareholders meeting on June 12, 2023, at which resolutions about authorizing

4    additional equity capital diluting the existing shareholders were voted on by only 20% of

5    shareholders who signed up to vote.  The shareholders did not hear any announcement about the

6    issues the Plaintiff Kama had raised or the fact that Plaintiff Kama had been terminated after she

7    raised these concerns.

8         57.      Northern Data has repeated this scheme numerous times since April 12, 2023, just

9    raising capital through additional authorized shares (a move that was approved by only few

10   shareholders who personally benefitted from these transactions), followed by issuing hyped-up

11   press releases to drive up the stock price.

12        58.      Defendants further misled investors by publishing an investor presentation in April

13   2023 with financials with Plaintiff Kaman's name, title as CFO and picture.  They did not ask

14   Plaintiff Kama to review the presentation.  She did not approve it, so Defendants misappropriated

15   her image and showed it in a false light, invading her privacy.

16                          **FIRST CAUSE OF ACTION**

17          **(WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

18                   **AS TO PLAINTIFF JOSHUA PORTER)**

19        59.      Plaintiff Porter incorporates paragraphs 1-58 as though set forth in their entirety

20   herein.

21        60.      Defendants terminated Plaintiff Porter's employment in violation of various

22   fundamental public policies underlying both state and federal law.  Specifically, Plaintiff Porter's

23   employment was terminated because of his whistleblowing complaints, and statements of intent to

24   notify the Board of Directors and others, that Thillainathan and Northern Data had engaged in tax

25   evasion by diverting the profits from the US-based mining operations offshore and not paying any

26   US taxes thereon and his repeated concerns that Northern Data's frequent statements,

27   representations and warranties about its financial condition and solvency were misleading and/or

28   untrue given the German and US tax liabilities, limited cash on hand and monthly burn rate.

ERVIN COHEN & JESSUP LLP

APPENDIX 020

1   61.    As a proximate result of Defendants' wrongful termination of Plaintiff Porter's

2   employment in violation of fundamental public policies, Plaintiff Porter has suffered and

3   continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all

4   to his damage in a sum according to proof.

5   62.    As a result of Defendants' wrongful termination of Plaintiff Porter's employment,

6   he has suffered general and specific damages in sums according to proof.

7   63.    Defendants' wrongful termination of Plaintiff Porter's employment was done

8   intentionally, in a malicious, fraudulent and oppressive manner, entitling Plaintiff Porter to

9   punitive damages.

10  64.    Plaintiff Porter has incurred and will continue to incur legal expenses and

11  attorneys' fees.  Pursuant to CCP section 1021.5 and 1032, Plaintiff Porter is entitled to recover

12  reasonably attorneys' fees and costs in an amount according to proof.

13  **SECOND CAUSE OF ACTION**

14  **(VIOLATION OF LABOR CODE SECTION 1102.5**

15  **AS TO PLAINTIFF JOSHUA PORTER)**

16  65.    Plaintiff Porter incorporates paragraphs 1-64 as though set forth in their entirety

17  herein.

18  66.    At all relevant times, Labor Code Section 1102.5 was in effect and was binding on

19  Defendants.  This statute prohibits Defendants from retaliating against any employee, including

20  Plaintiff Porter, for raising complaints of illegality.

21  67.    As set forth above, Plaintiff Porter complained to Northern Data's executive

22  officers and stated his intent to inform the Board of Directors of the companies' illegal behavior

23  including tax evasion and providing misleading and/or false statements, representations and

24  warranties to investors, regulators and business partners about the companies' solvency and

25  financial condition.

26  68.    Plaintiff Porter's whistleblowing activity commenced in early February 2023,

27  shortly after he was promoted, and Defendants took the most punitive adverse employment action

28  possible, terminating him, only six weeks later.

ERVIN COHEN & JESSUP LLP

18254.1:11166215.2

18

COMPLAINT

ERVIN COHEN & JESSUP LLP

69.     As a proximate result of Defendants' willful, knowing and intentional violations of Labor Code Section 1102.5, Plaintiff Porter has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

70.     As a result of Defendants' adverse employment actions against Plaintiff Porter, he has suffered general and specific damages in sums according to proof.

71.     Defendants' misconduct was done intentionally and in a malicious, fraudulent and oppressive manner, entitling Plaintiff Porter to punitive damages.

72.     Labor Code Section 1102.5(j) provides for the recovery of attorneys' fees and Plaintiff Porter is entitled to recover his reasonable attorneys' fees and costs in an amount according to proof.

## THIRD CAUSE OF ACTION

### (WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

### AS TO PLAINTIFF GULSEN KAMA)

73.     Plaintiff Kama incorporates paragraphs 1-72 as though set forth in their entirety herein.

74.     Defendants terminated Plaintiff Kama's employment in violation of various fundamental public policies underlying both state and federal law.  Specifically, Defendants retaliated against Plaintiff Kama because of her whistleblowing complaints regarding the Defendants' intention to mislead their potential auditor and the potential and current investors regarding the Defendants' financial position, including with respect to the same liquidity and  tax evasion issues that Porter raised and was ultimately terminated for requesting be remedied.

75.     Plaintiff Kama has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, and, as a result, she has been damaged in a sum according to proof, as a proximate result of Defendants' wrongful termination of Plaintiff Kama's employment in violation of fundamental public policies.

76.     Defendants' wrongful termination has caused Plaintiff Kama to suffer general and specific damages in sums according to proof.

APPENDIX 022

77.     Plaintiff Kama is entitled to punitive damages as Defendants' wrongful termination of her employment was done intentionally and in a malicious, fraudulent and oppressive manner.

### FOURTH CAUSE OF ACTION

**(VIOLATION OF NEW JERSEY'S CONSCIENTIOUS EMPLOYEE PROTECTION ACT ("CEPA"), N.J.S.A. § 34:19-1, *ET SEQ.* AS TO PLAINTIFF GULSEN KAMA)**

78.     Plaintiff Kama incorporates paragraphs 1-77 as though set forth in their entirety herein.

79.     At all relevant times, CEPA was in effect and was binding on Defendants. Defendants are prohibited, pursuant to the statute, from retaliating against any employee, including Plaintiff Kama, for raising complaints of illegality.

80.     As set forth above, Plaintiff Kama complained to Northern Data's executive officers repeatedly in order to keep them from reporting inaccurate financial information to their auditors and/or investors and to try to stop them from providing misleading and/or false statements, representations and warranties to investors, regulators and business partners about the companies' solvency and financial condition.

81.     Plaintiff Kama's whistleblowing activity commenced in or about late March 2023 and progressively ramped up until she was terminated on June 8, 2023, in retaliation for said whistleblowing activity.

82.     Defendants took the most punitive adverse employment action possible, terminating her in retaliation for her whistleblowing activities.

83.     Plaintiff Kama had a reasonable belief that the Defendants' conduct was violating either a law, rule, regulation, or public policy and as a result, she performed a "whistle blowing" activity. There was an adverse employment action in that she was terminated. The causal connection exists in that Plaintiff Kama had repeatedly warned the Defendants about its inappropriate and illegal conduct.

84.     As a proximate result of Defendants' willful, knowing and intentional violations of New Jersey's CEPA, N.J.S.A. § 34:19-1, *et seq.* Plaintiff Kama has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage

ERVIN COHEN & JESSUP LLP

1   in a sum according to proof.

2       85.     Plaintiff Kama has suffered general and specific damages in sums according to

3   proof as a result of Defendants' adverse employment actions against her.

4       86.     Plaintiff Kama is entitled to punitive damages as Defendants' misconduct was done

5   intentionally and in a malicious, fraudulent and oppressive manner.

6       87.     CEPA provides for the recovery of attorneys' fees and Plaintiff Kama is entitled to

7   recover her reasonable attorneys' fees and costs in an amount according to proof.

8                           **FIFTH CAUSE OF ACTION**

9                       **(MISAPPROPRIATION OF NAME AND LIKENESS**

10                       **AS TO PLAINTIFF GULSEN KAMA)**

11      88.     Plaintiff Kama incorporates paragraphs 1-87 as though set forth in their entirety

12  herein.

13      89.     California's and New Jersey's common-law rights of publicity protect people from

14  the unauthorized appropriation of their identity by another for commercial gain.

15      90.     Defendants have used the Plaintiff Kama's identity by publishing her name, title

16  and image in such a way that it looks like she authored and/or reviewed an authorized a

17  presentation for investors or potential investor beginning in April 2023, when she never reviewed

18  or approved the presentation, and which was placed on Defendants' website.  On information and

19  belief, Defendants have continued to publish this presentation after Kama was terminated and

20  became a California resident and, on further information and belief, the investor presentation of

21  April 2023 is still available on Northern Data's website, accessible by anyone.

22      91.     At no time has Defendants sought consent from Plaintiff Kama prior to publication,

23  or even after publication of said presentation.

24      92.     Defendants' appropriation and use of Plaintiff Kama's name, photograph and

25  likeness without her consent injured Plaintiff Kama by violating her privacy.

26      93.     In particular, Defendants have prevented and continue to prevent Plaintiff Kama

27  from retaining control over the dissemination of her personal information.

28  / / /

18254.1:11166215.2
                                        21
                                    COMPLAINT

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

94.     Plaintiff Kama also suffered economic injury because she was not compensated by Defendants for the use of the photo, name and likeness.  Further, her name and likeness appear in a document with fraudulent financial information that she did not review and approve beforehand; which could lead to the conclusion that she approved the publication of the investor presentation with misleading or false information.

95.     Kama is entitled to compensatory damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

### (FALSE LIGHT INVASION OF PRIVACY AS TO PLAINTIFF GULSEN KAMA)

96.     Plaintiff Kama incorporates paragraphs 1-95 as though set forth in their entirety herein.

97.     Plaintiff Kama has a prima facie case for invasion of privacy by appropriation of name or likeness requires as Defendants appropriated Plaintiff Kama's name or likeness and are still appropriating Plaintiff Kama's name and likeness.

98.     Defendants never obtained Plaintiff Kama's consent at all, ever, for their use of her name and likeness as part of a financial document that she had never reviewed or approved and that likely contained misleading or false information.

99.     As her name and likeness was on a document, an investor presentation, that obviously would be sent to investors and potential investors, as well as others, and was easily accessible from Defendants' website, the name and likeness was used for the Defendants' use or benefits.  It also presented Plaintiff Kama in a false light because it portrayed her as approving of the publication of the investor presentation with misleading or false information.  As a highly trained professional whose entire career is focused on ensuring accurate financial reporting and truthful financial disclosures to auditors and investors, Plaintiff Kama was uniquely harmed by Defendants' creating the inference, via the false investor report, that Plaintiff Kama supported, encouraged and/or authorized the publication of false financial information.

100.    The report contained false information, which makes Plaintiff Kama

1    unintentionally complicit in Defendants' fraud upon its auditors and current or potential investors.

2        101.    In addition, she was shown in a false light to be employed Defendants when the

3    document still remained on the website after she was terminated.

4        102.    Plaintiff Kama was damaged by Defendants' unauthorized and purposeful use of

5    her name and likeness.  She suffered harm to her reputation and damage to her occupation in an

6    amount to be proven at trial.

7                            **DEMAND FOR JURY TRIAL**

8        Plaintiffs demand trial of this matter by jury.  The amount demanded is in excess of

9    $35,000.

10                            **PRAYER FOR RELIEF**

11       WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

12   1.    For general, compensatory and special damages according to proof;

13   2.    For exemplary damages according to proof;

14   3.    For pre-judgment and post-judgment interest on all damages awarded;

15   4.    For costs of suit, including attorneys' fees to the extent allowed by law; and

16   5.    For such other and further relief as the Court deems just and proper.

17

18   DATED: March 8, 2024              ERVIN COHEN & JESSUP LLP

19

20                                     By: _____

21                                     Russell M. Selmont
                                       Attorneys for Plaintiffs, Joshua Porter
22                                     And Gulsen Kama

23

24

25

26

27

28

ERVIN COHEN & JESSUP LLP

18254.1:11166215.2                           23
                                         COMPLAINT

APPENDIX 026

EXHIBIT 2

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:** NORTHERN DATA US, INC., a Delaware
*(AVISO AL DEMANDADO):* corporation; NORTHERN DATA US HOLDINGS,
 INC., a Delaware corporation; and DOES 1 through 10, inclusive

**Electronically FILED by**
**Superior Court of California,**
**County of Los Angeles**
**3/08/2024 12:35 PM**
**David W. Slayton,**
**Executive Officer/Clerk of Court,**
**By E. Galicia, Deputy Clerk**

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
 JOSHUA PORTER, an individual, and GULSEN KAMA, an individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

 You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

 There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO!* Lo han demandado.  Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

 Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

 Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, County of Los Angeles
111 North Hill Street
Los Angeles, California 90012

CASE NUMBER:
*(Número del Caso):*
**24STCV05852**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: Russell M. Selmont, Esq.
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Ervin Cohen & Jessup LLP
9401 Wilshire Boulevard, 12th Floor, Beverly Hills, California 90212          (310) 273-6333

DATE: 03/08/2024                David W. Slayton, Executive Officer/Clerk of Court    Clerk, by  E. Galicia        , Deputy
*(Fecha)*                                 *(Secretario)*                                    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

    under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
           ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

18254.1:11184659.1
Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*
Westlaw Doc & Form Builder™

**APPENDIX 028**

EXHIBIT 3

APPENDIX 029

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Russell M. Selmont, Esq.   SBN: 252522<br>Ervin Cohen & Jessup LLP<br>9401 Wilshire Boulevard, 12th Floor, Beverly Hills, California 90212<br>TELEPHONE NO: (310) 273-6333   FAX NO.: (310) 859-2325<br>EMAIL ADDRESS:<br>ATTORNEY FOR *(Name)*: Joshua Porter | **Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>3/08/2024 12:35 PM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By E. Galicia, Deputy Clerk** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME: JOSHUA PORTER, et al. v. NORTHERN DATA US, INC., et al.

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| [X] **Unlimited** (Amount demanded exceeds $35,000) [ ] **Limited** (Amount demanded is $35,000 or less) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **24STCV05852** |
| | | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[X] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [X] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [X] punitive
4. Number of causes of action *(specify)*: Six (6)
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: March 8, 2024
Russell M. Selmont, Esq.
(TYPE OR PRINT NAME)                          ▶                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2024]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courts.ca.gov*

**APPENDIX 030**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
    Uninsured Motorist (46) *(if the*
    *case involves an uninsured*
    *motorist claim subject to*
    *arbitration, check this item*
    *instead of Auto)*
**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
       Wrongful Death
Product Liability *(not asbestos or*
    *toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
       Physicians & Surgeons
    Other Professional Health Care
       Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
       and fall)
    Intentional Bodily Injury/PD/WD
       (e.g., assault, vandalism)
    Intentional Infliction of
       Emotional Distress
    Negligent Infliction of
       Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil*
    *harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
       *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
       Contract *(not unlawful detainer*
       *or wrongful eviction)*
    Contract/Warranty Breach–Seller
       Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
       Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally*
    *complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent*
    *domain, landlord/tenant, or*
    *foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal*
    *drugs, check this item; otherwise,*
    *report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
       Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner
       Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex*
    *case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic*
       *relations)*
    Sister State Judgment
    Administrative Agency Award
       *(not unpaid taxes)*
    Petition/Certification of Entry of
       Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-*
       *harassment)*
    Mechanics Lien
    Other Commercial Complaint
       Case *(non-tort/non-complex)*
    Other Civil Complaint
       *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

EXHIBIT 4

APPENDIX 032

| SHORT TITLE  PORTER, et al. v. NORTHERN DATA US, INC., et al. | CASE NUMBER  24STCV05852 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

| This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court |
|---|

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | |
|---|---|
| 1.   Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7.   Location where petitioner resides. |
| 2.   Permissive filing in Central District. | 8.   Location wherein defendant/respondent functions wholly. |
| 3.   Location where cause of action arose. | 9.   Location where one or more of the parties reside. |
| 4.   Location where bodily injury, death or damage occurred. | 10.   Location of Labor Commissioner Office. |
| 5.   Location where performance required, or defendant resides. | 11.   Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6.   Location of property or permanently garaged vehicle. | |

| | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

LASC CIV 109 Rev. 01/23

For Mandatory Use

RESERV LV3-661.1

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

LASC Local Rule 2.3

**APPENDIX 033**

| SHORT TITLE  PORTER, et al. v. NORTHERN DATA US, INC., et al. | CASE NUMBER |
| --- | --- |

| | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
| --- | --- | --- | --- |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☒ 3601 Wrongful Termination | 1,(2,)3 |
| | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

LASC CIV 109 Rev. 01/23

For Mandatory Use

RS252TX1V84061.1

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

LASC Local Rule 2.3

**APPENDIX 034**

| SHORT TITLE  PORTER, et al. v. NORTHERN DATA US, INC., et al. | CASE NUMBER |
|---|---|

|  | A<br>Civil Case Cover<br>Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable<br>Reasons (see<br>Step 3 above) |
|---|---|---|---|
| **Contract** (Continued) | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/ negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation<br><br>Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

LASC Local Rule 2.3

**APPENDIX 035**

| SHORT TITLE  PORTER, et al. v. NORTHERN DATA US, INC., et al. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover<br>Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable<br>Reasons (see<br>Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation** (Continued) | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

LASC CIV 109 Rev. 01/23

For Mandatory Use

R8252 [X]-78661.1

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

LASC Local Rule 2.3

**APPENDIX 036**

| SHORT TITLE  PORTER, et al. v. NORTHERN DATA US, INC., et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON: ☐ 1. ⊠ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11 | ADDRESS: 111 North Hill Street |
|---|---|
| CITY: Los Angeles | STATE: CA | ZIP CODE: 90012 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the <u>Central  (Stanley Mosk)</u> District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: March 8, 2024

_____
(SIGNATURE OF ATTORNEY/FILING PARTY

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (01/23).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 01/23

For Mandatory Use

RESERVED NAME 361.1

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

LASC Local Rule 2.3

**APPENDIX 037**

EXHIBIT 5

| **SUPERIOR COURT OF CALIFORNIA** <br> **COUNTY OF LOS ANGELES** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS: <br> Stanley Mosk Courthouse <br> 111 North Hill Street, Los Angeles, CA 90012 | **FILED** <br> Superior Court of California <br> County of Los Angeles <br> 03/08/2024 <br> David W. Slayton, Executive Officer / Clerk of Court <br> By: _____E. Galicia_____ Deputy |
| **NOTICE OF CASE ASSIGNMENT** <br><br> **UNLIMITED CIVIL CASE** | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER: <br> 24STCV05852 |

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✓ | Upinder S. Kalra | 51 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on __03/08/2024__
    (Date)

David W. Slayton, Executive Officer / Clerk of Court

By E. Galicia _____, Deputy Clerk

LACIV 190 (Rev 6/18) <br> LASC Approved 05/06

### NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE

**APPENDIX 039**

<u>**INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES**</u>

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

<u>**APPLICATION**</u>

The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

<u>**PRIORITY OVER OTHER RULES**</u>

The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

<u>**CHALLENGE TO ASSIGNED JUDGE**</u>

A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

<u>**TIME STANDARDS**</u>

Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

<u>**COMPLAINTS**</u>

All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

<u>**CROSS-COMPLAINTS**</u>

Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

<u>**STATUS CONFERENCE**</u>

A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

<u>**FINAL STATUS CONFERENCE**</u>

The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

<u>**SANCTIONS**</u>

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

<u>**Class Actions**</u>

Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

<u>**\*Provisionally Complex Cases**</u>

Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

**APPENDIX 040**

EXHIBIT 6

 Superior Court of California, County of Los Angeles

---

**ALTERNATIVE DISPUTE RESOLUTION (ADR)**
**INFORMATION PACKAGE**

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

---

### What is ADR?

ADR helps people find solutions to their legal disputes without going to trial.  The main types of ADR are negotiation, mediation, arbitration, and settlement conferences.  When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR).  These alternatives to litigation and trial are described below.

### Advantages of ADR

- **Saves Time:**  ADR is faster than going to trial.
- **Saves Money:**  Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties):  Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:**  ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR

- **Costs:**  If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:**  ADR does not provide a public trial or decision by a judge or jury.

### Main Types of ADR

1. **Negotiation:**  Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial.  If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:**  In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all.  Mediators do not decide the outcome.  Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may <u>not</u> be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

---

## How to Arrange Mediation in Los Angeles County

Mediation for **civil cases** is voluntary and parties may select any mediator they wish.  Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

   - **ADR Services, Inc.** Assistant Case Manager Janet Solis, janet@adrservices.com
     (213) 683-1600
   - **Mediation Center of Los Angeles** Program Manager info@mediationLA.org
     (833) 476-9145

   **These organizations cannot accept every case and they may decline cases at their discretion.**
   They may offer online mediation by video conference for cases they accept.  Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

   **NOTE:  The Civil Mediation Vendor Resource List program does not accept family law, probate, or small claims cases.**

b. **Los Angeles County Dispute Resolution Programs.**  Los Angeles County-funded agencies provide mediation services on the day of hearings in small claims, unlawful detainer (eviction), civil harassment, and limited civil (collections and non-collection) cases.
   https://dcba.lacounty.gov/countywidedrp/

   **Online Dispute Resolution (ODR).**  Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.  https://my.lacourt.org/odr/

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration:**  Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome.  In "binding" arbitration, the arbitrator's decision is final; there is no right to trial.  In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision.  For more information about arbitration, visit
https://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):**  MSCs are ordered by the Court and are often held close to the trial date or on the day of trial.  The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.  For information about the Court's MSC programs for civil cases, visit https://www.lacourt.org/division/civil/CI0047.aspx

Los Angeles Superior Court ADR website:  https://www.lacourt.org/division/civil/CI0109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

EXHIBIT 7

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>03/08/2024<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: _____ A. Alba _____ Deputy |
| PLAINTIFF:<br>JOSHUA PORTER, an individual  et al | |
| DEFENDANT:<br>NORTHERN DATA US, INC., a Delaware corporation, et al. | |
| **NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>24STCV05852 |

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

| Date: 07/08/2024 | Time: 8:30 AM | Dept.: 51 |
|---|---|---|

NOTICE TO DEFENDANT:   THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: 03/08/2024

_____
Judicial Officer
**CERTIFICATE OF SERVICE**   Upinder S. Kalra / Judge

I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☑ by depositing in the United States mail at the courthouse in Los Angeles , California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☐ by personally giving the party notice upon filing of the complaint.

Russell M. Selmont
9401 Wilshire Boulevard, 12th Floor
Beverly Hills, CA 90212-2974

David W. Slayton, Executive Officer / Clerk of Court

Dated: 03/08/2024

By A. Alba _____
Deputy Clerk

LASC LACIV 132 Rev. 01/23
For Optional Use

**NOTICE OF**
**CASE MANAGEMENT CONFERENCE**

Cal. Rules of Court, rules 3.720-3.730
LASC Local Rules, Chapter 7KUHH

**APPENDIX 045**