Cheryl Johnson-Hartwell (SBN 221063)
E-mail: cjohnson-hartwell@bwslaw.com
Keiko J. Kojima (SBN 206595)
E-mail: kkojima@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, California 90071-2953
Tel: 213.236.0600 Fax: 213.236.2700

Attorneys for Defendants
Northern Data US, Inc. and Northern Data
US Holdings, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JOSHUA PORTER, an individual, and GULSEN KAMA, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> NORTHERN DATA US, INC., a Delaware corporation; NORTHERN DATA US HOLDINGS, INC., a Delaware corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 2:24-cv-03389-ODW (AGRx) <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND MOTION TO STRIKE** <br><br> **[*Filed concurrently with Declarations of Darja Busch and Keiko J. Kojima; [Proposed] Order]*** <br><br> **Date:   August 19, 2024** <br> **Time:   1:30 p.m** <br> **Ctrm:   5D – Fifth Floor** <br><br> **Judge: Hon. Otis D. Wright II** |

TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 19, 2024 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 5D of the Court, located at 350 West 1st Street, Los Angeles, California, Defendants Northern Data US, Inc. and Northern Data US Holdings, Inc. ("Defendants" or "Northern Data") will move this Court for an order to dismiss the First Amended Complaint ("FAC") and to strike for the following reasons:

///

(1)    This Court lacks personal jurisdiction over the claims of the Plaintiffs under Federal Rule of Civil Procedure 12(b)(2).

(2)    All of Plaintiffs' claims must be dismissed because they sound in fraud and fail to allege fraud with particularity as required by Federal Rule of Civil Procedure 9(b).

(3)    Kama's Third Cause of Action for Wrongful Termination fails to state a claim because it is preempted by the New Jersey Conscientious Employee Protection Act ("CEPA").

(4)    Kama's Fifth Cause of Action for Misappropriation of Name and Likeness fails to state a claim under Federal Rule of Civil Procedure 12(b)(6).

(5)    Kama's Sixth Cause of Action for False Light Invasion of Privacy fails to state a claim under Federal Rule of Civil Procedure 12(b)(6).

(6)    Pursuant to Rule 12(f), Federal Rules of Civil Procedure, Defendants move for an order striking Paragraphs ¶¶14-16, 17, 23, 42, 43, 45, and 46. Those paragraphs contain allegations drawn from privileged attorney-client communications. Plaintiffs cannot utilize privileged information because they are not holders of the privilege and are not entitled to waive it.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the Declarations of Darja Busch and Keiko J. Kojima, and the Exhibits attached thereto, the documents previously filed with the Court that have been incorporated by reference, the complete record in the action, and on such other matters that may be presented to the Court at the hearing on this matter.

This motion is made following Defendants' counsel's meet and confer with Plaintiffs' counsel and related communications to arrange a further meet and confer pursuant to Local Rule 7-3. Kojima Decl., ¶¶3-8 & Exhibits 1-2.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

2

CASE NO. 2:24-CV-03389-ODW (AGRX)
DEFS.' MOTION TO DISMISS FAC AND
MOTION TO STRIKE

1    Dated:  July 15, 2024            BURKE, WILLIAMS & SORENSEN, LLP

2

3

4            By: _____

5                Cheryl Johnson-Hartwell

                 Keiko J. Kojima

6                Attorneys for Defendants

                 Northern Data US, Inc. and Northern

7                Data US Holdings, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Los Angeles

3

CASE NO. 2:24-CV-03389-ODW (AGRX)
DEFS.' MOTION TO DISMISS FAC AND
MOTION TO STRIKE

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ................................................................................. 1

II.    RELEVANT FACTS ........................................................................... 4

III.   LEGAL STANDARD ......................................................................... 6

IV.    NONE OF PLAINTIFFS' CLAIMS BELONG IN CALIFORNIA ................ 7

    A.    There Is No Personal Jurisdiction Over Plaintiffs' Claims ................... 7

        1.    There Is No General Personal Jurisdiction Over Defendants ............................................................................. 7

        2.    The Court Lacks Specific Jurisdiction Over Defendants ............ 8

V.     ALL CLAIMS ARE DEFICIENT ON THE MERITS ................................ 13

    A.    Plaintiffs Have Failed to Allege Fraud With Required Particularity ............................................................................. 13

    B.    Plaintiff Kama's Third Cause of Action for Wrongful Termination is Preempted by CEPA ....................................... 17

    C.    Plaintiff Kama's Misappropriation and False Light Claims Fail.......... 17

VI.    PLAINTIFFS' ALLEGATIONS ARISING FROM PRIVILEGED COMMUNICATIONS MUST BE STRICKEN ............................................. 19

VII.   CONCLUSION ................................................................................. 21

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

i

CASE NO. 2:24-CV-03389-ODW (AGRX)
DEFS.' MOTION TO DISMISS FAC AND
MOTION TO STRIKE

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Federal Cases

*Amoco Egypt Oil Co. v. Leonis Navigation Co.*,
   1 F.3d 848 (9th Cir. 1993) ................................................................. 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................... 6

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
   566 F.3d 1012 (9th Cir. 2009) ............................................................ 8

*Bly-Magee v. California*,
   236 F.3d 1014 (9th Cir. 2001) .......................................................... 14

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008) ............................................................ 6

*Branch v. Tunnell*,
   14 F.3d 449 (9th Cir. 1994) ........................................................ 7, 18

*Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco*,
   582 U.S. 255 (2017) ......................................................................... 11

*Burnett v. McLane Foodservice, Inc.*,
   No. EDCV1801908JAKSHKX, 2019 WL 446225 (C.D. Cal. Feb. 5,
   2019) .................................................................................................. 5

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ............................................... 7, 14, 15

*Calabria v. State Operated Sch. Dist. for City of Paterson*,
   No. CIV.A.06-CV6256 (DMC), 2008 WL 3925174 (D.N.J. Aug.
   26, 2008) .......................................................................................... 17

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) .................................................................. 6, 7, 8

*Domenichello v. Tidal Basin Gov't Consulting, LLC*,
   No. 24-CV-005-TSM, 2024 WL 3274725 (D.N.H. July 2, 2024) .................... 10

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Los Angeles

*Esquibel v. Kinder Morgan, Inc.*,
No. 21-CV-02510-WHO, 2021 WL 2435277 (N.D. Cal. June 15, 2021) .......................................................................................................... 14

*Esslinger v. Endlink, LLC*,
No. 22-cv-153-TCB, 2023 WL 3931505 (N.D. Ga. Apr. 13, 2023) ................. 10

*In re Finjan Holdings, Inc.*,
58 F.4th 1048 (9th Cir. 2023) ............................................................................ 14

*Fodor v. Blakey*,
No. CV1108496MMMRZX, 2012 WL 12893986 (C.D. Cal. Dec. 31, 2012) ........................................................................................................... 19

*Gallego v. Garcia*,
2010 WL 2354585 (S.D. Cal. June 9, 2010) ...................................................... 13

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
972 F.3d 1101 (9th Cir. 2020) ............................................................................. 9

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ............................................................................................. 6

*Grootonk v. Labrie Env't Grp., LLC*,
Case No. 8:22-cv-01868-FWS-ADS, 2023 WL 5420299 (C.D. Cal. July 20, 2023) ......................................................................................... 8, 10, 11

*Hartsell v. Duplex Products, Inc.*,
895 F. Supp. 100 (W.D.N.C. 1995) .................................................................... 19

*Heliotrope Gen. Inc. v. Ford Motor Co.*,
189 F.3d 971 (9th Cir. 1999) ............................................................................... 4

*Johnson v. Fed. Home Loan Mortg. Corp.*,
793 F.3d 1005 (9th Cir. 2015) ........................................................................... 18

*Kama v. Quest Diagnostics Incorporated*,
HUD-L-001964-23 (N.J. Sup. Ct.) ....................................................................... 1

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ......................................................... 7, 14, 15, 16

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

2

CASE NO. 2:24-CV-03389-ODW (AGRX)
DEFS.' MOTION TO DISMISS FAC AND
MOTION TO STRIKE

*Klarkowski v. Athletic & Therapeutic Inst. of Naperville, LLC*,
   No. 18-c-62, 2018 WL 1835990 (E.D. Wis. Apr. 17, 2018)...............................14

*Lucachick v. NDS Americas, Inc.*,
   169 F. Supp. 2d 1103 (D. Minn. 2001) ..................................................................10

*McClendon v. Hewlett-Packard Co.*,
   No. CV-05-087-S-BLW, 2005 WL 1421395 (D. Idaho June 9,
   2005)........................................................................................................................19

*Mewawalla v. Middleman*,
   601 F. Supp. 3d 574 (N.D. Cal. 2022).....................................................................10

*Moledina v. Marriott Intern., Inc.*,
   635 F. Supp. 3d 941 (C.D. Cal. 2022).......................................................................6

*Morgan v. AXT, Inc.*,
   No. C 04-4362 MJJ, 2005 WL 2347125 (N.D. Cal. Sept. 23, 2005)................15

*Mostowfi v. i2 Telecom Int'l, Inc.*,
   269 F. App'x 621 (9th Cir. 2008)..............................................................................16

*United States ex rel. Nikakhtar v. Gateway Hosp.*,
   No. CV1106842BROJCGX, 2013 WL 12132061 (C.D. Cal. Oct.
   25, 2013)..................................................................................................................14

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015).....................................................................................7

*Rodridguez v. Ready Pac Produce*,
   No. 13–4634, 2014 WL 1875261 (D.N.J. May 9, 2014) ...................................17

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004)...........................................................................6, 8, 9

*Sher v. Johnson*,
   911 F.2d 1357 (9th Cir. 1990).....................................................................................8

*Thermolife Int'l, LLC v. Compound Sols., Inc.*,
   848 F. App'x 706 (9th Cir. 2022).............................................................................16

*Todd v. STAAR Surgical Co.*,
   No. CV1405263MWFRZX, 2015 WL 13388227 (C.D. Cal. Aug.
   21, 2015)..................................................................................................................19

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

3

CASE NO. 2:24-CV-03389-ODW (AGRX)
DEFS.' MOTION TO DISMISS FAC AND
MOTION TO STRIKE

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
  592 F.3d 954 (9th Cir. 2010) ................................................................. 4

*Walden v. Fiore*,
  571 U.S. 277 (2014) ................................................................... 6, 9, 11

**State Cases**

*Bisbee v. John C. Conover Agency, Inc.*,
  186 N.J. Super. 335 (App. Div.1982) ................................................... 18

*Kama v. Jackson Hewitt et al*,
  No. HUD-L-1637-16 (N.J. Sup. Ct.) ..................................................... 1

*Kama v. Quest Diagnostics Incorporated*, HUD-L-001964-23 (N.J.
  Sup. Ct.) ................................................................................................ 1

*Mitchell v. Superior Ct.*,
  37 Cal. 3d 591 (1984) ......................................................................... 20

*Romaine v. Kallinger*,
  109 N.J. 282 (1988) ............................................................................ 18

*Zurich Am. Ins. Co. v. Superior Ct.*,
  155 Cal. App. 4th 1485 (2007) ........................................................... 20

**State Statutes**

California's Fair Employment and Housing Act, Cal. Code Regs. tit. 2 §
  11008 .................................................................................................. 12

New Jersey's Conscientious Employee Protection Act ("CEPA"),
  N.J.S.A. § 34:19-1 ...................................................................... 2, 3, 17

**Rules**

Fed. R. Civ. P.
  Rule 8 ............................................................................................ 3, 17
  Rule 9(b) .................................................................................... *passim*
  Rule 12(b)(2) ................................................................................... 6, 7
  Rule 12(b)(6) ............................................................................ 2, 3, 6, 7
  Rule 12(f) ...................................................................................... 7, 19

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:24-CV-03389-ODW (AGRX)
DEFS.' MOTION TO DISMISS FAC AND
MOTION TO STRIKE

**Other Authorities**

*$16 Billion Value,* BLOOMBERG (July 1, 2024),
https://www.bloomberg.com/news/articles/2024-07-01/northern-
data-weighs-ai-unit-us-ipo-at-up-to-16-billion-value ...........................................4

*2023 Audited Financial Results*, NORTHERN DATA GROUP,
https://northerndata.de/market-insights/a-look-into-northern-datas-
2023-audited-financial-results ..............................................................................15

*Annual Report 2022,* NORTHERN DATA GROUP
(https://lp.northerndata.de/hubfs/Investor%20Relations/Financial%2
0Reports/ND_AR2022_EN.pdf) ..........................................................................16

Aroosh Thillainathan, *A Look into Northern Data's 2023 Audited
Financial Result* ..................................................................................................15

Fourteenth Amendment .................................................................................................6

Gulsen Kama's Bio Details, Bionano (July 9, 2024),
https://ir.bionanogenomics.com/senior-management/gulsen-kama ....................3

https://northerndata.de/en/investor-relations/news/northern-data-ag-
public-prosecutors-office-frankfurt-a-m-discontinues-preliminary-
investigations-regarding-allegation-of-market-ma..............................................17

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:24-CV-03389-ODW (AGRX)
DEFS.' MOTION TO DISMISS FAC AND
MOTION TO STRIKE

## I.   __INTRODUCTION__

This case is a textbook example of bad faith litigation.  Porter and Kama are former employees of Northern Data who had unproductive, brief tenures at the company.  Kama was terminated for cause; Porter was terminated in a broader wave of layoffs for his lack of productivity.  When Porter and Kama made extortionate demands for "severance" payments, Northern Data rejected them.  In response, both employees now style themselves as "whistleblowers" and seek to profit personally and financially from allegations that they know—and have every reason to know—are false.  Northern Data, a few days before this filing, released its audited financial statements for 2023 (just as it did in 2020, 2021, and 2022).  That obviously could not have happened had Northern Data and its external audit team determined that any of what Kama and Porter publicly alleged in the complaint months ago had any merit.  The purpose of this lawsuit is not to blow the whistle; it is tactical, and about their claims for "millions of dollars" in compensation. *See* FAC ¶¶1-2.

Self-identifying as a "whistleblower" is not a new experience for Plaintiff Kama.  Before this lawsuit, she sued her past two employers on whistleblower and discrimination theories.[1]   These include well-known companies in different industries, including Jackson Hewitt (a tax preparation company) and Quest Diagnostics (a medical diagnostic information provider).  *See* FAC ¶30.  This suit marks her third suit in a row against her former employers.  Plaintiff Porter's lack of productivity was so pervasive that even co-Plaintiff Kama complained about him to Northern Data, criticizing him for having "done nothing" during his brief tenure.

Not surprisingly, the FAC is rife with inaccuracies, including about basic facts.  But even accepting the well-pleaded factual allegations as true, the FAC must be dismissed in its entirety.

---

[1] *Kama v. Jackson Hewitt et al*, No. HUD-L-1637-16 (N.J. Sup. Ct.); *Kama v. Quest Diagnostics Incorporated*, HUD-L-001964-23 (N.J. Sup. Ct.).

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

1

CASE NO. 2:24-CV-03389-ODW (AGRX)
DEFS.' MOTION TO DISMISS FAC AND
MOTION TO STRIKE

First, this lawsuit does not belong in California because there is no jurisdiction over the corporate defendants, both of whom are incorporated in Delaware and have their principal place of business in Virginia.  FAC ¶¶5-6.  Northern Data is not subject to general personal jurisdiction in California.  Specific jurisdiction does not attach because this case does not arise from facts that have a connection to Northern Data's California activities.  Neither Defendant has any California offices or operations or activities.  Plaintiff Porter was hired to be a remote worker who happens to reside in California, but Defendants did not recruit him based on any California connection or to perform work in California.  Kama's claims have zero connection to California. She was a remote worker residing in New Jersey who only happened to move to California at an unspecified date when the FAC ambiguously asserts her claims "arose and/or persisted."  FAC ¶9.  Courts routinely hold that the mere in-state presence of remote workers is insufficient for an employer to "purposely avail" or "purposely direct activity" to a forum state. The only other fact the FAC alleges to establish jurisdiction—that some employees of Northern Data's parent company in Germany attended a technology conference in Silicon Valley *after* both employees left the company—does not cut it and cannot establish jurisdiction.

Second, each claim should be dismissed on the merits under Rules 9(b) and 12(b)(6) because Plaintiffs have failed to plead their allegations of fraud with particularity.  The core of each of Plaintiffs' six claims is an alleged systemic accounting and tax fraud perpetrated by Defendants "to the tune of potentially tens of millions dollars."  FAC ¶1.  These are inflammatory but completely unsupported claims.  Nowhere in the FAC does either Plaintiff allege with *any* particularity the who, what, when, or where of the purported fraud as required under Rule 9(b) and this Court's cases imposing heightened pleading standards.

Third, Kama 's Third Cause of Action for wrongful termination is preempted as a matter of law by New Jersey's Conscientious Employee Protection Act ("CEPA"), N.J.S.A. § 34:19-1.  New Jersey law does not recognize a separate cause

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Los Angeles

2

CASE NO. 2:24-CV-03389-ODW (AGRX)
DEFS.' MOTION TO DISMISS FAC AND
MOTION TO STRIKE

of action for wrongful termination if a plaintiff alleges a CEPA violation for the same alleged misconduct.  It is black-letter law that CEPA preempts and precludes these common law claims.

Fourth, beyond failing under Rule 9(b), Kama's Fifth and Sixth claims for misappropriation of name and likeness and false light invasion of privacy fail to state a claim under Rules 8 and 12(b)(6). They are, in fact, frivolous.  Kama's two tort claims are based on an April 2023 written company presentation, which is incorporated into the FAC by reference and attached as Exhibit A.  That presentation identifies Kama along with other individuals of Northern Data Group's leadership team on a "Who we are" section of the document.  The FAC alleges that Defendants published Kama's name, photo, and image in a way that looks like she authored or reviewed for authorization the written presentation, but the document itself facially and unambiguously contradicts this bizarre characterization.  Kojima Decl., Ex. 3. Kama's theory—that Northern Data is liable in tort by identifying her role correctly in a company document—is specious. It is even more groundless when one considers that the biography on her new employer's website *promotes* her former role as the former "Chief Financial Officer at Northern Data AG."[2]  A plaintiff cannot sue an employer for "false light" when the plaintiff voluntarily embraces the "false light" after employment and the document supporting the "false light" claim utterly negates it.

Fifth, certain portions of the FAC undeniably contain or refer to privileged communications with Northern Data's former Chief Legal and Compliance Officer. Plaintiffs have no justification for including these materials in their complaint.  It is absolutely improper for Plaintiffs to release and rely on attorney-client

---

[2] *See* Gulsen Kama's Bio Details, Bionano (July 9, 2024), https://ir.bionanogenomics.com/senior-management/gulsen-kama.  Her biography also contradicts her claims that Northern Data had minimal regard for controls and guardrails, as she says that while at Northern Data, she "created and implemented a global finance organization to enable strong growth."  *Id.*

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Los Angeles

3

CASE NO. 2:24-CV-03389-ODW (AGRX)
DEFS.' MOTION TO DISMISS FAC AND
MOTION TO STRIKE

communications and attorney work product to assert claims for personal financial gain, as they are not the holders of Northern Data's privileges and have no right to waive them.

Northern Data respectfully requests that the Court grant this motion to strike and motion to dismiss.

## II.   RELEVANT FACTS

Plaintiffs allege Defendants are the US subsidiaries of Northern Data AG, a publicly traded German company in the cryptocurrency and bitcoin mining industries. FAC ¶1.  Recent news reports have speculated that Northern Data is planning to embark on an initial public offering of its artificial intelligence business, which those reports value up to $16 billion.[3]  If that were true (and Defendants do not comment on market speculation), the period leading up to an IPO is a particularly sensitive time for a company.  As Plaintiffs undoubtedly know, public accusations of fraud—no matter how irresponsible—can disrupt that process.

The two named defendants are Delaware corporations with principal places of business in Reston, Virginia.  FAC ¶¶5-6.  Their ultimate parent corporation—Northern Data, A.G.—is headquartered in Germany and is not a defendant here. Busch Decl., ¶3. Contrary to Plaintiffs' vague and unsupported allegations, Defendants do *not* have offices, a "branch" or any business operations of any sort in California. Busch Decl., ¶4; *contra* FAC ¶10.  Nor do Defendants own or lease any property in California.  Busch Decl., ¶4.

---

[3] *See* David Pan and Eyk Henning, *Northern Data Weighs AI Unit IPO at Up to $16 Billion Value,* BLOOMBERG (July 1, 2024), https://www.bloomberg.com/news/articles/2024-07-01/northern-data-weighs-ai-unit-us-ipo-at-up-to-16-billion-value.  Media reports are judicially noticeable documents provided they are not considered by the Court for the truth of their content, but rather for the fact that the reports exist.  *See, e.g., Von Saher v. Norton Simon Museum of Art at Pasadena,* 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'"); *Heliotrope Gen. Inc. v. Ford Motor Co.,* 189 F.3d 971, 981 n.118 (9th Cir. 1999) (taking judicial notice "that the market was aware of the information contained in news articles submitted by the defendants.").

4

For about one year, from March 2022 until March 2023, Porter served as Defendants' Chief Operating Officer.  FAC ¶¶12, 27.  Porter alleges he was "promoted" to President and CEO, that assertion is contradicted by his own updated resume—in reality, his job title was always COO. *See* Kojima Decl., ¶10 & Ex. 4.[4] Porter completed his duties remotely, allegedly from his home in Los Angeles, California. FAC ¶3; Busch Decl., ¶5.  Porter alleges that his duties were "central operations for the Americas," but does not make any claims that he had duties specific to California.  FAC ¶13.  Nor could he.  Defendants did not hire Porter because of any connection to California, nor did they hire Porter to build operations in the state. Busch Decl., ¶6.  The only particular state Porter alleges a business deal in is Texas, not California. FAC ¶17.

Porter makes vague allegations about contacts with various employees of Defendants in other states as well as Northern Data AG personnel in Europe.  FAC ¶¶14-27.  The alleged fraudulent conduct relates to operations for an unidentified duration of an unidentified "offshore entity" in Gibraltar (FAC ¶14) and an unspecified "German tax liability" (FAC ¶20).  None of these allegations touches on California.

Kama's tenure with Defendants was similarly brief .  She was hired with a start date of July 20, 2022 as "North America Chief Financial Officer" and later Group Chief Financial Officer at Northern Data.  FAC ¶2.  Kama also worked remotely from her home in New Jersey, but was required to travel "outside of New Jersey and the United States."  FAC ¶¶4, 32; Busch Decl., ¶5.  The FAC omits the details about her post-employment and voluntary decision to move to California.  It alleges in conclusory fashion that she is "a resident of the State of California for the other part

---

[4] The court can take judicial notice of Porter's own public LinkedIn page.  *See Burnett v. McLane Foodservice, Inc.*, No. EDCV1801908JAKSHKX, 2019 WL 446225, at *4 (C.D. Cal. Feb. 5, 2019) (taking judicial notice of a defendant's LinkedIn webpage because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

1  of the time giving rise to these claims" (FAC ¶4), but fails to plead whether she moved

2  to San Diego County before or after her June 8, 2023 termination (FAC ¶56).  The

3  FAC makes no allegation that Defendants directed any action toward her in California

4  when she was an employee.

5      Like Porter, Kama makes vague allegations about accounting and securities

6  fraud relating to actions, individuals, and entities in Europe.  FAC ¶¶36-58.

7  **III.  <u>LEGAL STANDARD</u>**

8      Under Rule 12(b)(2), where a defendant "mo[ves] to dismiss for lack of

9  personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is

10  proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008); *Schwarzenegger*

11  *v. Fred Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004).  There are two

12  recognized bases for personal jurisdiction: (1) "general jurisdiction," which arises

13  where a defendant's activities in the forum are sufficiently "substantial" or

14  "continuous and systematic" as to "render it essentially at home in the forum State,"

15  *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014), and (2) "specific jurisdiction,"

16  which arises when a non-resident defendant's "suit-related conduct must create a

17  substantial connection with the forum State."  *Walden v. Fiore*, 571 U.S. 277, 284

18  (2014).  In addition, under the Due Process Clause of the Fourteenth Amendment, to

19  exercise personal jurisdiction over an out-of-state defendant, the defendant must have

20  "certain minimum contacts with [the State] such that the maintenance of the suit does

21  not offend traditional notions of fair play and substantial justice." *Goodyear Dunlop*

22  *Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011).  The Court may consider

23  affidavits submitted by Defendants in analyzing whether personal jurisdiction exists

24  and "may not assume the truth of allegations contradicted by affidavit."  *Moledina v.*

25  *Marriott Intern., Inc.*, 635 F. Supp. 3d 941, 946 (C.D. Cal. 2022).

26      To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain

27  sufficient factual content to allow the court to draw the reasonable inference that the

28  defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

6

CASE NO. 2:24-CV-03389-ODW (AGRX)
DEFS.' MOTION TO DISMISS FAC AND
MOTION TO STRIKE

679 (2009). Further, where, as here, a complaint "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of that claim," it must satisfy Rule 9(b)'s heightened pleading requirements. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (state law claims that do not contain fraud as a "necessary element" must nonetheless "satisfy the particularity requirement" when they rely on fraud as the "basis of that claim"). This requires Plaintiffs to identify "the who, what, when, where, and how of the misconduct charged[.]" *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). For the purposes of a Rule 12(b)(6) motion, the Court may consider documents referred to in the FAC whose authenticity is not questioned by the parties. *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994).

Lastly, a motion to strike under Rule 12(f) may remove from a pleading "any redundant, immaterial, impertinent, or scandalous material." Fed. R. Civ. P. 12(f).

## IV.    NONE OF PLAINTIFFS' CLAIMS BELONG IN CALIFORNIA

### A.    There Is No Personal Jurisdiction Over Plaintiffs' Claims

Both Plaintiffs' claims should be dismissed under Rule 12(b)(2), as Defendants are not subject to personal jurisdiction in this Court as to their claims.

#### 1.    *There Is No General Personal Jurisdiction Over Defendants*

A corporation may be subject to general jurisdiction in a state only if its contacts within the state are so "continuous and systematic"—in comparison to its national and global activities—that it is "essentially at home" there. *Daimler*, 571 U.S. at 137-139 & n.20. "The paradigmatic locations where general jurisdiction is appropriate over a corporation are its place of incorporation and its principal place of business." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (citing *Daimler*, 571 U.S. at 137). Here, Defendants are Delaware corporations with their principal place of business in Virginia. *See* FAC ¶¶5-6.

Plaintiffs' other allegations are insufficient to show the type of "continuous and systematic" contacts that would subject Defendants to general jurisdiction. Plaintiffs'

frivolous allegation (which lends insight into the veracity of FAC as a whole) that Defendants have "continuous contacts with the State of California" because Northern Data "attended and was a 'Platinum Sponsor' of the 2024 GPU Technology Conference ("GTC24") which occurred on March 18, 2024 through March 21, 2024 at the San Jose Convention Center" (FAC ¶10) does not confer jurisdiction. *See, e.g., Autogenomics, Inc. v. Oxford Gene Tech. Ltd*., 566 F.3d 1012, 1017–18 (9th Cir. 2009) (attendance at "four conferences over five years constitute only sporadic and insubstantial contacts"). Likewise, the assertion that Defendants "also have a branch" in California (FAC ¶10) and "have business operations in Los Angeles, California" (FAC ¶9) is factually incorrect and in any event insufficient to render them "essentially at home" in California. Busch Decl., ¶4; *see also Daimler*, 571 U.S. at 139. Therefore, California courts cannot exercise general personal jurisdiction over the Defendants.

### 2.    *The Court Lacks Specific Jurisdiction Over Defendants*

Where general jurisdiction does not exist, the Ninth Circuit has established a three-factor test that must be satisfied in order for the Court to exercise specific jurisdiction: (1) the non-resident defendant must purposefully direct their activities or consummate some transaction with the forum or resident thereof, or perform some act by which the defendant purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d at 802. The plaintiff bears the burden on the first two prongs. *See Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). Moreover, personal jurisdiction must be "proper for each claim asserted against a defendant." *Grootonk v. Labrie Env't Grp., LLC,* Case No. 8:22-cv-01868-FWS-ADS, 2023 WL 5420299, at *5 (C.D. Cal. July 20, 2023).

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

8

CASE NO. 2:24-CV-03389-ODW (AGRX)
DEFS.' MOTION TO DISMISS FAC AND
MOTION TO STRIKE

"Under the first prong of the specific-jurisdiction inquiry, 'purposeful availment' and 'purposeful direction' are distinct concepts." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020). For the purposeful direction test, the defendant must have allegedly (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Schwarzenegger*, 374 F.3d at 803. Purposeful availment exists when a defendant's dealings with a state establish a "quid pro quo"—where the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," and in return "submit[s] to the burdens of litigation" in the State. *Schwarzenegger*, 374 F.3d at 802 (cleaned up).[5]

Critically, the Supreme Court has made clear that the forum's exercise of jurisdiction under these tests "must be based on intentional conduct *by the defendant* that creates the necessary contacts with the forum." *Walden*, 571 U.S. at 286 (emphasis added). It is "insufficient to rely on a defendant's . . . fortuitous or attenuated contacts or on the unilateral activity of a plaintiff." *Id.* (internal citation and quotation marks omitted); *see also id.* at 285 ("the plaintiff cannot be the only link between the defendant and the forum"). "Rather, it is the *defendant's* conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 286 (emphasis added). "[M]ere injury to a forum resident is not a sufficient connection to the forum" to establish specific jurisdiction. *Id.* at 290

Neither Porter's nor Kama's jurisdictional allegations can meet their burden to show *Defendants*' case-related purposeful activity directed at California. For Porter,

---

[5] Purposeful availment generally provides a more useful frame of analysis for claims sounding in contract, while purposeful direction is often the better approach for analyzing claims in tort. *Glob. Commodities*, 972 F.3d at 1106. However, the courts do not impose a rigid dividing line between these two types of claims. *Id.*

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

9

CASE NO. 2:24-CV-03389-ODW (AGRX)
DEFS.' MOTION TO DISMISS FAC AND
MOTION TO STRIKE

the only connection to California is that he chose to live in California while working remotely for Defendants. FAC ¶9; Busch Decl., ¶5.  While Porter claims *he* worked from California, he does not adequately establish conduct by *Defendants* directed at California.  Defendants did not hire Porter because he resided in California and did not direct its recruitment efforts towards hiring a California resident.  Busch Decl., ¶6.  Courts routinely reject the assertion that the location of a remote employee in the forum is sufficient to meet the minimum contacts analysis.  *See, e.g.*, *Grootonk*, 2023 WL 5420299, at *8 (holding a plaintiff alleging employment discrimination who resided in and was fired in California did not establish either purposeful direction or purposeful availment by her out-of-state employer); *Domenichello v. Tidal Basin Gov't Consulting, LLC*, No. 24-CV-005-TSM, 2024 WL 3274725, at *5 (D.N.H. July 2, 2024) ("a nonresident defendant's employment of a remote worker in the forum state is not, own [sic] its own, sufficient to show purposeful availment") (collecting cases); *Esslinger v. Endlink, LLC*, No. 22-cv-153-TCB, 2023 WL 3931505, at *6 (N.D. Ga. Apr. 13, 2023) (similar); *Lucachick v. NDS Americas, Inc.*, 169 F. Supp. 2d 1103, 1107 (D. Minn. 2001) (holding plaintiff employee who made the "personal choice" to live in Minnesota while his employer's headquarters were in California does not support a finding of jurisdiction over employer).  It is a corollary of these holdings that an employer's knowledge of an employee's California residence is irrelevant to a Court's jurisdictional analysis.  *See Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 593 (N.D. Cal. 2022) ("[K]nowledge alone of a plaintiff's California affiliation is not sufficient to demonstrate express aiming) (citing *Axiom Foods Inc*, 874 F.3d at 1069-70).

Porter's situation is similar to that in *Grootonk*, where personal jurisdiction did not lie over the nonresident defendants based on their employment of remote working executives in California.  *Groontonk* rejected jurisdiction given the plaintiff's failure to show that "Defendants' labor law violations and employment discrimination were *expressly aimed at California*, rather than at Plaintiff alone."  2023 WL 5420299, at

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

10

CASE NO. 2:24-CV-03389-ODW (AGRX)
DEFS.' MOTION TO DISMISS FAC AND
MOTION TO STRIKE

*7 (emphasis added).  The same is true here:  Because Porter's jurisdictional allegations do no more than claim that he lived in California during the time he was working for Defendants, and there are no facts alleging that Defendants "expressly aimed" at California, there is no specific jurisdiction.

Kama's claims are completely unrelated to California, as she worked remotely from New Jersey until the unspecified time she moved to California.  Kama's decision to move to California is "unilateral activity" that the Supreme Court has rejected as a basis for specific jurisdiction.  *See Walden*, 571 U.S. at 287.  Kama's alleged injuries in California cannot alone create minimum contacts because Kama does not allege that Defendants aimed any conduct at her in California.  *See id*. at 290 ("Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State.").  Indeed, Kama's assertion that her injury has traveled with her simply underscores that for both her and Porter, the alleged injury "is not tethered to California at all; it is instead 'entirely personal to Plaintiff and would follow her wherever she might choose to live or travel[.]]"  *Grootonk*, 2023 WL 5420299, at *8 (alteration adopted, citation omitted).

As noted above, Porter and Kama also allege other unrelated California conduct of unspecified business activities, a "branch" in California, and attendance at a single conference. FAC ¶¶9-10. But these are false statements to the Court, as Defendants have no branch or business activities directed in California.  Busch Decl., ¶4.  Moreover, Plaintiffs cannot point to these unrelated contacts for *specific jurisdiction* because, without *claim*-related contacts, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco*, 582 U.S. 255, 264 (2017).  Porter and Kama's claims have nothing to do with the one California conference and the non-existent branch offices and business activities they cite to in the FAC.  A claim of injury in the forum is not enough.  *Walden*, 571 U.S. at 290.

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Los Angeles

11

CASE NO. 2:24-CV-03389-ODW (AGRX)
DEFS.' MOTION TO DISMISS FAC AND
MOTION TO STRIKE

* * *

Because Plaintiffs' claims do not arise from Defendants' forum-related activity, the Court need not address the issue of "reasonableness" and "traditional notions of fair play and substantial justice."  But even if Plaintiffs could meet their burden of showing that their claims arise from Northern Data's contacts with California (and they cannot), dismissal of their claims would be warranted because the exercise of personal jurisdiction over Defendants with respect to those claims would be unreasonable and unworkable.

Courts in the Ninth Circuit consider the following seven factors to evaluate the reasonableness of jurisdiction over a nonresident defendant: (1) the extent of purposeful interjection; (2) the burden on the defendant to defend the suit in the chosen forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in the dispute; (5) the most efficient forum for judicial resolution of the dispute; (6) the importance of the chosen forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.  *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851 (9th Cir. 1993). Here, a majority of the factors favor dismissal for lack of personal jurisdiction.

<u>Forum State's Interest</u>. Nonresidents of California cannot bring claims under California's employment laws unless the conduct at issue took place in California. *See, e.g.,* California's Fair Employment and Housing Act ("FEHA"), Cal. Code Regs. tit. 2 § 11008 ("[E]mployees located outside of California are not themselves covered by the protections of the Act if the allegedly unlawful conduct did not occur in California, or the allegedly unlawful conduct was not ratified by decision makers or participants in unlawful conduct located in California.").  Accordingly, for Kama, California has no interest, let alone a special interest, in resolving her claims, which involved her employment in New Jersey.  Nor do California courts have an interest in resolving disputes concerning the application of another state's laws, such as the New Jersey whistleblower laws Kama raises.

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

12

CASE NO. 2:24-CV-03389-ODW (AGRX)
DEFS.' MOTION TO DISMISS FAC AND
MOTION TO STRIKE

<u>Efficiency of Judicial Resolution</u>.  No efficiency is to be gained by litigating Plaintiffs' claims in California, particularly as Defendants' witnesses and relevant documents are not located in California, their principal place of business is Virginia, and most of the individuals mentioned in the complaint are based in Germany or the UK.  *See* FAC ¶¶1, 12, 10. The unavailability of a subpoena process to call an overwhelming majority of foreign witnesses for trial points strongly against the exercise of jurisdiction. *See Gallego v. Garcia*, 2010 WL 2354585, at *4 (S.D. Cal. June 9, 2010) (finding that the compulsory process factor weighed in favor of dismissal because the court did not have the means to compel unwilling witnesses residing in Mexico to appear and testify in the United States).  Indeed, the Defendants have *no* other employees in California.  Busch Decl., ¶6.

<u>Plaintiffs' Interest in Forum</u>.  Kama claims a particular connection with, or interest in, this forum, due to her post-termination residence in California. That is not a sufficient basis to make the exercise of personal jurisdiction reasonable because all the suit-related conduct occurred elsewhere.

<u>Existence of Alternative Forum</u>. Both Plaintiffs could bring claims against Defendants in Delaware or Virginia. *See* FAC ¶¶5-6.

Accordingly, the Court should dismiss all Plaintiffs' claims against Defendants for lack of personal jurisdiction.

## V.    **ALL CLAIMS ARE DEFICIENT ON THE MERITS**

### A.    **Plaintiffs Have Failed to Allege Fraud With Required Particularity**

On the merits, each of Plaintiffs' claims fail because they fail to allege fraud with the particularity required by Rule 9(b).  The entire premise of each of Plaintiffs' claims is the existence of a purported massive accounting, tax, and securities fraud scheme. FAC ¶¶1-2, 23, 26, 42, 48, 53, 56, 64, 68, 72, 75, 78, 81, 87, 95 and 101. Even where fraud is not "a necessary element" of Plaintiffs' claims, it is well-established in this Circuit that where a Plaintiff alleges "a uniform course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of [their]

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

13

CASE NO. 2:24-CV-03389-ODW (AGRX)
DEFS.' MOTION TO DISMISS FAC AND
MOTION TO STRIKE

claim[s]," their claims "sound in fraud" and the FAC "as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns*, 567 F.3d at 1125; *see also* Fed. R. Civ. P. 9(b) (applying to "all averments of fraud or mistake"); *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1057 (9th Cir. 2023) (Claim that "management knew that the revenue predictions … were incorrect" and "endorsed the predictions and the resulting analysis" sounded in fraud and "the pleading of [the] claim must comply with Rule 9(b)."). This rule directly applies to wrongful termination and whistleblower claims based on fraud. *See United States ex rel. Nikakhtar v. Gateway Hosp.*, No. CV1106842BROJCGX, 2013 WL 12132061, at *6 (C.D. Cal. Oct. 25, 2013) (applying Rule 9(b) to wrongful termination in violation of public policy claim grounded in allegations of "fraudulent billing practices"); *Klarkowski v. Athletic & Therapeutic Inst. of Naperville, LLC*, No. 18-c-62, 2018 WL 1835990, at *2 (E.D. Wis. Apr. 17, 2018) ("Because Klarkowski alleges that ATI fired him contrary to public policy for failing to submit to ATI's fraudulent treatment and billing practices, his allegations 'sound in fraud' and necessarily implicate Rule 9(b)."); *Esquibel v. Kinder Morgan, Inc.,* No. 21-CV-02510-WHO, 2021 WL 2435277, at *6 (N.D. Cal. June 15, 2021) (similar); *cf. Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (insiders privy to the fraud "should have adequate knowledge of the wrongdoing at issue, such insiders should be able to comply with Rule 9(b)").

To comply with Rule 9(b), Plaintiffs must identify "the who, what, when, where and how of the misconduct charged," as well as "what is false or misleading about the purportedly fraudulent statement, and why it is false." *Cafasso*, 637 F.3d at 1055 (alteration adopted). Neither Plaintiff comes close to meeting that standard. Plaintiff Porter alleges to have learned that " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ FAC ¶14. The entire basis for the allegation of *impropriety* is that ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which Porter alleges ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

CASE NO. 2:24-CV-03389-ODW (AGRX)
DEFS.' MOTION TO DISMISS FAC AND
MOTION TO STRIKE

██████████ FAC ¶¶15-16. But that allegation is rank speculation and not a well-pleaded fact. Porter does not allege that Deloitte ever said, wrote, stated, or indicated in any fashion that ████████████████████████████████. Nor does he actually allege that he had any direct or indirect contact with Deloitte. FAC ¶16. It is not enough under 9(b) to make inflammatory allegations—*i.e.*, that Northern Data evaded taxes to "the tens of millions of dollars"—yet not include any specific factual allegations supporting that inflammatory claim. *See Cafasso*, 637 F.3d at 1055; *Morgan v. AXT, Inc.*, No. C 04-4362 MJJ, 2005 WL 2347125, at *14 (N.D. Cal. Sept. 23, 2005) (allegations of accounting fraud must "allege that particular accounting decisions were improper" and that "defendants knew specific facts at the time that rendered their accounting determinations fraudulent"). Indeed, Porter repeatedly attacks the integrity of senior Northern Data executives based on *nothing more* than "information and belief." FAC ¶¶25-26.

Porter's other allegations fare no better, as he concedes he had "limited understanding of Northern Data's financials" but professes fraud because he learned about a "$30M German tax liability and additional liabilities of almost $8M" with $17M cash on hand. FAC ¶20.[6] Porter does not identify what financial statement he reviewed or how any of these numbers reveal a "fraud." He does not allege what Defendants' true position was compared to any reported position. The FAC instead relies on high-level generalizations without any specificity. None of this is sufficient particularity under Rule 9(b). *See Kearns*, 567 F.3d 1125-26.

Like Porter, Kama also alleges fraud in generic terms that cannot withstand Rule 9(b)'s scrutiny. Kama alleges that KPMG purportedly had concerns about Northern Data's liquidity position (FAC ¶34), that Defendants were misrepresenting

---

[6] *See* Aroosh Thillainathan, *A Look into Northern Data's 2023 Audited Financial Results*, NORTHERN DATA GROUP, https://northerndata.de/market-insights/a-look-into-northern-datas-2023-audited-financial-results (July 12, 2024) (noting that Northern Data's 2023 audited financial results indicated that it possessed "a solid capital position with significant cash on hand" and "secured USD1 billion in debt and equity funding").

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

15

CASE NO. 2:24-CV-03389-ODW (AGRX)
DEFS.' MOTION TO DISMISS FAC AND
MOTION TO STRIKE

1    "their financial position" to KPMG and potential investors in early 2023 (FAC ¶¶39,

2    41, 42), and she repeatedly alleges concerns of being "cut out of the loop" (FAC ¶46).

3    Kama does not provide any specific well-pleaded facts.  She also does not allege what

4    Defendants' true position was compared to their reported position, when false

5    statements were made, by whom, or what accounting and securities rules were

6    violated.  She does not identify any assets, liabilities, cash positions, or tax positions

7    allegedly concealed from outside auditors.  Kama's closest allegation is the vague

8    statement in paragraph 56 that Northern Data misled KPMG "as to Defendants'

9    financial status," but this lacks any particularity of who, what, when, and where.  And

10   she never mentions the results of KPMG's audit—including that KPMG signed off

11   on the financials for fiscal year 2022 (which flatly contradict her claims).[7]  Despite

12   making no specific allegation that material information was withheld from KPMG (or

13   anyone else), Kama blithely accuses Northern Data's CEO and COO of "purposely

14   committing accounting and securities fraud" without any specific allegations as to

15   how they did so. FAC ¶47.  Rule 9(b) plainly requires more—*much more*—to survive

16   a motion to dismiss.  *Kearns*, 567 F.3d at 1126 (affirming dismissal where complaint

17   did not "specify" what the allegedly fraudulent documents "specifically stated");

18   *Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 624 (9th Cir. 2008) (pleader

19   must "detail with particularity the time, place, and manner of each act of fraud");

20   *Thermolife Int'l, LLC v. Compound Sols., Inc.*, 848 F. App'x 706, 708 (9th Cir. 2022)

21   (rejecting "conclusory allegations" of fraud).  Boilerplate and muckraking do not

22   satisfy Rule 9(b).

23          For these reasons, all of Plaintiffs' claims must be dismissed because they are

24

25

---

26   [7] *See    Annual    Report    2022,*  NORTHERN    DATA    GROUP,
27   (https://lp.northerndata.de/hubfs/Investor%20Relations/Financial%20Reports/ND_AR2022_EN.p
     df) ("The annual financial statements and consolidated financial statements of Northern Data AG
28   for fiscal year 2022 have been audited by KPMG[.]").

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES                              16              CASE NO. 2:24-CV-03389-ODW (AGRX)
                                                          DEFS.' MOTION TO DISMISS FAC AND
                                                          MOTION TO STRIKE

1   not pled with particularity.[8]

2   ## B.    **Plaintiff Kama's Third Cause of Action for Wrongful Termination**

3   **is Preempted by CEPA**

4   Kama's third cause of action for *common law* wrongful termination fails

5   because it is preempted by her New Jersey CEPA claim.[9]  Plaintiff Kama's wrongful-

6   termination claim is barred since it is premised on alleged retaliation for

7   whistleblowing under CEPA.  *See Rodridguez v. Ready Pac Produce*, No. 13–4634,

8   2014 WL 1875261, at *11 (D.N.J. May 9, 2014) ("While causes of action that are

9   independent from CEPA claims are not waived, 'causes of action that are directly

10  related to the employee's termination due to disclosure of the employer's wrongdoing'

11  fall within CEPA's waiver provision."); *Calabria v. State Operated Sch. Dist. for City*

12  *of Paterson*, No. CIV.A.06-CV6256 (DMC), 2008 WL 3925174, at *7 (D.N.J. Aug.

13  26, 2008) ("Similar to Plaintiffs' NJLAD claim, this wrongful termination claim is

14  preempted by CEPA because the causes of action are substantially related.").  The

15  third cause of action is precluded by the CEPA claim and must be dismissed.

16  ## C.    **Plaintiff Kama's Misappropriation and False Light Claims Fail**

17  In addition to failing to allege fraud with particularity under Rule 9(b), Kama's

18  misappropriation of name and likeness and false light invasion of privacy claims

19  additionally fail under Rule 8.  Each is based on an April 2023 company presentation,

20  which identifies Kama along with other individuals of Northern Data Group's

21  leadership team on a "Who we are" section of the document.  FAC ¶¶59, 89-102. The

22

---

23  [8] Kama also refers to a "criminal complaint" previously filed by German financial regulators in

24  2021. FAC ¶42. Kama omits that the German authorities discontinued the investigation in less than a month due to lack of suspicion and, accordingly formally rejected the initiation of investigative proceedings      against      Northern      Data      AG.      *See*      https://northerndata.de/en/investor-

25  relations/news/northern-data-ag-public-prosecutors-office-frankfurt-a-m-discontinues-preliminary-investigations-regarding-allegation-of-market-ma.

26

27  [9] Kama does not identify what law she believes applies to her wrongful termination claim.  For purposes of this motion, the applicable state law does not change the outcome as all common law

28  claims based on identical conduct as alleged in a CEPA violation is preempted.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

17

CASE NO. 2:24-CV-03389-ODW (AGRX)
DEFS.' MOTION TO DISMISS FAC AND
MOTION TO STRIKE

1  page includes her name, title and photo, along with the names, titles and photos of six
2  other individuals identified as being a part of Group Leadership or Divisional
3  Leadership. *See* Ex. 3 to Kojima Decl.[10]

4         The claims based on this document are frivolous by any measure.  The FAC
5  alleges that Defendants published Kama's name, photo, and image in a way that looks
6  like she authored or reviewed for authorization the written presentation (FAC ¶59),
7  but the presentation facially contradicts this point.  *See* Kojima Decl. ¶9 & Ex. 3.  The
8  presentation merely lists her name and position along the rest of the Group Leadership
9  and Divisional Leadership Teams.  *See* Ex. 3 to Kojima Decl.  In order to state a claim
10 for misappropriation of name and likeness, Kama must allege that a defendant
11 improperly used her name or likeness "for the purpose of appropriating to the
12 defendant's benefit the commercial or other values associated with the name or
13 likeness ...." *Bisbee v. John C. Conover Agency, Inc*., 186 N.J. Super. 335, 342, 452
14 A.2d 689 (App. Div.1982).  The document on its face does nothing more than identify
15 her as an employee.  *See* Kojima Decl., ¶9 & Ex. 3.

16        Kama's false light claim is equally baseless. Plaintiff cannot establish that the
17 alleged use of her name and likenesses would be "highly offensive to a reasonable
18 person."  *Bisbee*, 186 N.J. Super. at 342, 452 A.2d 689; *Romaine v. Kallinger*, 109
19 N.J. 282, 293 (1988).  Kama makes no attempt to explain how listing her accurately
20 as the CFO misappropriates her image or places her in a false light.  This conclusion
21 is buttressed by the fact that her current biography voluntarily repeats the same
22 information she now claims put her in a "false light" when she was employed at
23 Northern Data.  *See* n.2.  Kama's tort claims are flatly repudiated by the very
24 document on which she relies.  *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d
25 1005, 1007 (9th Cir. 2015) ("[W]e need not accept as true allegations contradicting

---

[10] Because Kama references and incorporates the document in the FAC (FAC ¶¶59, 91, 100), this Court should consider it when evaluating her allegations. *See Branch*, 14 F.3d at 453-44.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

18

CASE NO. 2:24-CV-03389-ODW (AGRX)
DEFS.' MOTION TO DISMISS FAC AND
MOTION TO STRIKE

1  documents that are referenced in the complaint."). Kama's tort claims are objectively
2  devoid of legal merit.

## VI.  PLAINTIFFS' ALLEGATIONS ARISING FROM PRIVILEGED COMMUNICATIONS MUST BE STRICKEN

Finally, Plaintiffs' lawsuit improperly relies on multiple allegations taken directly from attorney-client privileged communications by and between Northern Data's former Chief Legal and Compliance Officer, Jim Black, who regularly provided legal advice to Northern Data. These allegations must be stricken from the FAC under Rule 12(f).

Indeed, under Federal Rule of Civil Procedure 12(f), courts routinely strike sections of a pleading, where, as here, the pleading relies on inadmissible or privileged information. *See, e.g., Todd v. STAAR Surgical Co.,* No. CV1405263MWFRZX, 2015 WL 13388227, at *11 (C.D. Cal. Aug. 21, 2015) (granting motion to strike several allegations in plaintiff's complaint because the allegations were based on information that was either attorney-client privileged or constituted material covered by the work product doctrine); *Fodor v. Blakey,* No. CV1108496MMMRZX, 2012 WL 12893986, at *8 (C.D. Cal. Dec. 31, 2012) (granting motion to strike all allegations in the complaint concerning privileged marital communications); *McClendon v. Hewlett-Packard Co.,* No. CV-05-087-S-BLW, 2005 WL 1421395, *6 (D. Idaho June 9, 2005) ("paragraphs 13-15 and 18 contain privileged, HP attorney-client communications and McClendon does not have the authority to waive the evidentiary privilege.... Only HP's management may waive this privilege.... Thus, the Court will grant HP's motion to strike [these] paragraphs"); *Hartsell v. Duplex Products, Inc.,* 895 F. Supp. 100, 103 (W.D.N.C. 1995) (striking allegations from an answer that were based on testimony given during an Employment Security Commission hearing because such testimony was privileged under state law).

Plaintiffs' allegations in FAC ¶¶14-16, 17, 23, 42, 43, 45, and 46 directly address communications that are protected by attorney-client privilege. Indeed, the

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

FAC itself pleads facts sufficient to show these are clearly privileged communications by describing in detail the discussions between Plaintiffs Porter and Kama, other executive members of Northern Data and Jim Black that involved seeking or obtaining legal advice on behalf of the company. *See e.g.,* FAC ¶21 ("Throughout February 2023, Plaintiff Porter had multiple conversations (via videoconference) with Northern Data's Executive Leadership Team ("ELT"), including Thillainathan, Yoshida, Black, and Kincaid-Smith (now COO) to express his concerns with the company's financial state, cash position and solvency (or potential lack thereof"); ¶45 ("On April 24, 2023, before sending out the forecast submission to KPMG, Plaintiff Kama emailed Black, Kincaid-Smith and Thillainathan. . . ."). The below chart provides detailed bases that Northern Data asserts should remain privileged, and therefore stricken:

| FAC ¶¶ | Basis for Privilege |
|---|---|
| ¶¶14-16, 17, 23 | These allegations reflect communications between Chris Yoshida and Jim Black regarding Northern Data's corporate tax structure. |
| ¶¶42-43, 45, 46 | These allegations reflect written communications by Jim Black regarding Northern Data's draft press communications. |

The information contained in these allegations fall squarely within the definition of attorney-client communications—they contain legal advice obtained or received by Porter and Kama on behalf of Northern Data. *See Zurich Am. Ins. Co. v. Superior Ct.*, 155 Cal. App. 4th 1485, 1496 (2007) ("The attorney-client privilege covers all forms of communication, including transactional advice and advice in contemplation of threatened litigation ....") (internal citation and quotation marks omitted). Plaintiffs' unauthorized use of the information from these communications directly contravenes the "fundamental purpose" of attorney-client privilege, which is "to safeguard the confidential relationship between clients and their attorneys so as to promote full and open discussion of the facts and tactics surrounding individual legal matters." *Mitchell v. Superior Ct.*, 37 Cal. 3d 591, 599 (1984) (internal citation

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

20

CASE NO. 2:24-CV-03389-ODW (AGRX)
DEFS.' MOTION TO DISMISS FAC AND
MOTION TO STRIKE

omitted).   Porter and Kama are not holders of the privilege and have no ability to waive it.

Because Plaintiffs' allegations improperly rely on privileged communications, Defendants respectfully request that the Court strike these allegations from the FAC.

## VII.   <u>CONCLUSION</u>

This unfortunate suit is a poorly veiled effort by former employees to extract additional compensation from Northern Data.  It has been filed in a State that cannot exercise personal jurisdiction over the Defendants.  It purports to bring whistleblower claims relating to accounting and tax issues that are not described with any specificity.  It asserts frivolous false light and misappropriation claims that are refuted by the very document they cite.  And it improperly utilizes privileged information that belongs to the company, and not the plaintiffs.  Strike suits like these are damaging to companies.  Throwing around terms like "tax evasion" and "securities fraud" with no factual support is irresponsible, which is precisely why Rule 9(b) performs a critical screening function.  The Motion to Dismiss and Strike should be granted and the FAC should be dismissed.

Dated:  July 15, 2024                    BURKE, WILLIAMS & SORENSEN, LLP

By: _____
Cheryl Johnson-Hartwell
Keiko J. Kojima
Attorneys for Defendants
Northern Data US, Inc. and Northern
Data US Holdings, Inc.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

21

CASE NO. 2:24-CV-03389-ODW (AGRX)
DEFS.' MOTION TO DISMISS FAC AND
MOTION TO STRIKE

**Certificate of Compliance**

[L.R. 11-6.2]

The undersigned, counsel of record for Defendants Northern Data US, Inc. and Northern Data US Holdings, Inc., certifies that this brief contains 6,907 words, which complies with the word limit of L.R. 11-6.1.

Dated:  July 15, 2024                    BURKE, WILLIAMS & SORENSEN, LLP

By: _____
Cheryl Johnson-Hartwell
Keiko J. Kojima
Attorneys for Defendants
Northern Data US, Inc. and Northern
Data US Holdings, Inc.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

22                    CASE NO. 2:24-CV-03389-ODW (AGRX)
DEFS.' MOTION TO DISMISS FAC AND
MOTION TO STRIKE